IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SHIONOGI PHARMA, INC.
AND CIMA LABS INC.,

    Plaintiffs,

v.

MYLAN PHARMACEUTICALS INC.,

    Defendant.

C. A. No. 10-1077-MMB

## STIPULATION AND [JOINT PROPOSED] DISCOVERY PLAN

Pursuant to Fed. R. Civ. P. 26(f), and after conferring on these matters, plaintiffs Shionogi Pharma, Inc. ("Shionogi"), CIMA LABS INC. ("CIMA") (collectively "Plaintiffs") and defendant Mylan Pharmaceuticals Inc. ("Mylan" or "Defendant") hereby propose to the Court an agreed protocol for discovery.

1. **Fact and Expert Discovery**

Fact and expert discovery will proceed according to the schedule set forth in the Court's April 1, 2011 Scheduling Order [Dkt. No. 34]. Plaintiffs' have objected to producing documents and other fact discovery related solely to Mylan's amended antitrust counterclaim pending the Court's ruling on Plaintiffs' Motion to Dismiss. Mylan believes that discovery on its antitrust counterclaim should proceed.

2. **Interrogatories**

The parties have agreed that each party may serve up to 25 interrogatories on each other party. For purposes of interrogatory limits, Shionogi and CIMA will be considered a single party.

3. **Requests for Admissions**

The parties have agreed that each party may serve up to 50 requests for admission on each other party, not counting requests for admission to establish the authenticity or admissibility

of documents. For purposes of request-for-admission limits, Shionogi and CIMA will be considered a single party.

4. **Depositions**

(a) Fact Depositions

The parties have agreed that each party may take twelve (12) fact depositions, including depositions in a personal capacity, 30(b)(6) depositions, and third-party depositions. Each party is limited to no more than two (2) seven-hour 30(b)(6) depositions relating to the patent issues. Should Mylan's antitrust claims remain in this litigation, then each party is limited to one 30(b)(6) deposition relating to such claims. Depositions of fact witnesses who are not named inventors of U.S. Patent No. 6,740,341 ("'341 Patent") are limited to seven (7) hours. Plaintiffs believe that fact depositions of named inventors should be limited to seven (7) hours. Mylan believes that fact depositions of named inventors should be limited to fourteen (14) hours.

(b) Expert Depositions

Expert depositions are limited to seven (7) hours. If, however, an expert submits more than one report (*e.g.*, on both infringement and validity), that expert may be deposed for a maximum of ten (10) hours. To the extent the parties require more time for any expert deposition, they will negotiate regarding any additional time required in good faith. For purposes of both fact and expert depositions, Shionogi and CIMA will be considered a single party.

5. **Electronically Stored Information ("ESI")**

(a) General:

The procedures and protocols set forth in this Order shall govern the production of ESI.

(b) <u>Document Production Format</u>

ESI shall be produced electronically, as single page, numbered TIFF image files with appropriate load files. Such ESI shall be produced in a manner that preserves, to the maximum extent possible, the integrity of multipage groups of documents as set forth below. Pursuant to District of Delaware Default Standards for Discovery of Electronic Documents, after initial production in image file format is complete, a party must demonstrate particularized need for production of electronic documents in their native format (i.e. the file structure of ESI defined by the original creating application). In the event a good faith request is made for production of native format documents, the Parties shall negotiate in good faith about the timing, cost and method of such production.

To the extent that a party possesses Excel spreadsheets containing predominant amounts of non-responsive information, it will be acceptable to remove the non-responsive information from the Excel spreadsheet in the native format, before converting the Excel spreadsheet to a TIFF format for production. While non-responsive information may be removed from the spreadsheet, the spreadsheet formatting and header information is not be altered or removed from the file. Each party will also maintain an original, native copy of the Excel spreadsheet from which information was removed, which can be inspected in redacted form by the opposing party upon a good faith request.

(c) <u>Appearance and Content</u>

Subject to any appropriate redaction, and to subsection (b) above regarding native redaction of Excel spreadsheets for non-responsive information, each document's electronic image shall convey the same information and image as the original document. Documents that present imaging or formatting problems shall be promptly identified, and the Parties shall meet and confer in an attempt to resolve the problems.

(d) <u>Load File</u>

To the extent production is made in an electronic format susceptible to creation of a load file (i.e. a set of scanned images and indicates where individual pages belong together as documents), the Producing Party shall provide a load file to accompany the TIFF images that are produced to facilitate the use of the produced images by a document management or litigation support system.

(e) <u>Document Unitization</u>

If a document is more than one page, to the extent possible, the unitization of the document and any attachments or affixed notes shall be maintained as it existed in the original file or computer of the Producing Party. If unitization cannot be maintained, the original unitization shall be noted, documented in a load file, or otherwise electronically tracked.

(f) <u>Color</u>

Documents containing color need not be originally produced in color. If an original document contains color necessary to understand the meaning or content of the document, however, the Producing Party shall honor reasonable requests for either the production of an original document for inspection and copying, or production of a color image of the document.

(g) <u>Document Numbering for TIFF Images</u>

Each page of a produced document, produced in TIFF file format shall have a legible, unique document number electronically "burned" onto the image at a location that does not obliterate, conceal or interfere with any information from the source document. The document number for each document shall be created so as to identify the Producing Party and the document number. Each page of each production shall have a unique number. If a document is produced subject to a claim that it is protected from disclosure under the Protective Order, the word "Confidential – Subject to Protective Order" or "Highly Confidential – Subject to

Protective Order" shall be burned electronically on each page of such document. Any redacted page shall also include the word "Redacted" burned on the TIFF image at the location of the redaction(s).

(h)   Production Media

The Producing Party shall produce documents on readily accessible, computer or electronic media, including CD-ROM, DVD and external hard drive (with standard PC compatible interface or access to a secure on-line repository agreed upon by the Parties). Each piece of production media shall be assigned a unique identifying label corresponding to the date of the production of documents on the production media as well as the sequence of the material in that production. An example of this convention is "Shionogi Production March 1, 2006 SHIO 0000123 - SHIO 0000456." Production media shall also include text referencing the case name and number. Further, any replacement production media shall cross-reference the original production media and clearly identify that it is a replacement and cross-reference the document number range that is being replaced.

(i)   Original Documents

The Producing Party shall retain native electronic source documents for all ESI produced in this litigation. The Producing Party shall take all reasonable measures to maintain the original native electronic source documents in a manner so as to preserve the metadata associated with these electronic materials as it existed at the time of production in the event review of such metadata becomes necessary.

(j)   Third-Party Software:

To the extent ESI produced pursuant to this Order cannot be rendered or viewed without the use of proprietary third-party software, the Parties shall cooperate and seek to attempt to minimize any expense or burden associated with production and review of such ESI. The Parties

shall meet and confer to address such issues as may arise with respect to obtaining access to any such software and operating manuals which are the property of a third party.

   (k) <u>Documents of Limited Accessibility</u>

The parties shall negotiate in good faith concerning the production of any Documents of limited accessibility, which includes ESI created or used by electronic media no longer in use (including back up tapes), documents maintained in redundant electronic storage media, or for which retrieval involves substantial cost. However, pursuant to District of Delaware Default Standards for Discovery of Electronic Documents, electronic searches of documents identified as of limited accessibility shall not be conducted until the initial electronic document search has been completed. Requests for information expected to be found in limited accessibility documents must be narrowly focused with some basis in fact supporting the request. If the Parties are unable to reach agreement, the Parties shall submit any dispute to the Court and the Court shall determine what burdens may be imposed upon the Producing or Receiving Parties in order to resolve the dispute, and whether or to what extent the costs of such production shall be borne by the Producing or Receiving Parties.

   (l) <u>Metadata</u>

The Parties agree that, to the extent it exists, and can be extracted, all of the following Metadata fields for each document shall be produced:

  i. BegDoc – unique alpha numeric page identifier for first page of document, used to identify all tiff images, native files and text files
  ii. EndDoc
  iii. BegAttach - first page of attachment range
  iv. EndAttach - unique alpha last page of attachment range
  v. PageCount
  vi. Custodian
  vii. Author
  viii. Recipient
  ix. CC
  x. SentDate MM/DD/YYYY (or similar) format

      xi.  ReceivedDate MM/DD/YYYY (or similar) format
     xii.  EmailSubject
    xiii.  Native_Path
    xiv.  FileName
     xv.  FileExtension
    xvi.  CreatedDate MM/DD/YYYY (or similar) format
   xvii.  LastModifiedDate MM/DD/YYYY (or similar) format

(m)    <u>English Language:</u>

To the extent any ESI exists in more than one language, the Parties will make a good faith effort to search for English versions of foreign language documents, and the ESI shall be produced in English, if available. With respect to any foreign language document a Party will rely on in their affirmative case, that Party will produce an official translation of that document.

(n)    <u>Duplicate Production Not Required</u>

A Party producing ESI in electronic form need not produce the same document in paper format. In addition, the Parties have agreed to a global approach to deduplication of documents across all sources of electronic document collection, such that only one copy of any given electronic document need be produced.

(o)    <u>Keyword Searches</u>

The Parties shall conduct keyword searches of emails using agreed upon search terms. At a later date to be agreed upon by the Parties, each party shall identify no less than seven (7) and no more than ten (15) custodians and no more than forty (40) search terms it will use. If a Party objects to any aspect of the other Party's search terms and/or custodians, the Parties shall meet-and-confer in a good faith attempt to reach agreement as to the appropriate search terms and/or custodians to use. Each Party reserves the right to alter the search terms to the extent that they return an unreasonable volume of non responsive email documents, under the condition that the Producing Party provides notice to the Receiving Party of the alteration of the search term(s) at issue and gives the Receiving Party the opportunity to negotiate possible limitations on the

search term(s). For purposes of keyword and custodial searches, Shionogi and CIMA will not be considered a single party. Plaintiffs and Defendant will each be responsible for identifying the custodians whose emails will be searched.

6. **Timing and Sequencing of Electronic Discovery**

Any Party under an obligation to produce ESI shall commence the production of such ESI and proceed with the production of the ESI in a timely manner consistent with time considerations to be developed by the Parties and the schedule set forth in the Court's April 1, 2011 Scheduling Order [Dkt. No. 34].

7. **Paper Discovery**

Each Producing Party has an independent and separate obligation to produce documents responsive to a Receiving Party's discovery requests, when such documents exist in paper format, and may choose to produce such paper documents in TIFF format. Upon request and a showing of good cause (*e.g.*, problems with legibility or formatting), the Producing Party must make the original paper documents available for inspection at a mutually agreeable time and place.

8. **Claims of Privilege**

An appropriate Protective Order, including one or more provisions governing privileged information and the inadvertent production of privileged information, shall be submitted to the Court by the parties at a later date.

9. **Privilege Logs**

The parties have agreed that no party is obligated to identify on its privilege log any privileged or work product documents that were generated on or after October 25, 2010, the date indicated on the face of Mylan's Paragraph IV Certification Notice to Plaintiffs. Nothing in this provision affects or changes a party's ability to challenge any party's right to withhold any document based on attorney-client privilege, work-product doctrine, and/or other legal privilege

protections. The parties agree that they will exchange initial logs of privilege documents and information created before October 25, 2010 within thirty (30) days after the deadline for substantial production of all documents.

10. **Method of Service for Litigation Documents**

Other than produced documents and things, the parties agree to serve all pleadings, other service copies of documents, and written communications between counsel to each other's counsel via email. The parties shall exchange the email addresses for all individuals who should be copied on document service correspondence. The parties agree that all documents can be served up until midnight in the time zone of the service party for service to be effective that day.

11. **Modification of Order**

The Parties may modify this Order only by written agreement and only to the extent such agreement does not conflict with another Order of this Court. Upon motion, the Court may order modification of this Order upon a showing of good cause. Nothing in this Order shall be construed as precluding any party from seeking such modification.

| **CONNOLLY BOVE LODGE & HUTZ LLP** | **POTTER ANDERSON & CORROON LLP** |
|---|---|
| */s/ Kristen Healey Cramer* | */s/ Richard L. Horwitz* |
| Kristen Healey Cramer (#4512) | Richard L. Horwitz (#2246) |
| Karen R. Poppel (#5373) | David E. Moore (#3983) |
| 1007 North Orange Street | Hercules Plaza, 6th Floor |
| P.O. Box 2207 | 1313 N. Market Street |
| Wilmington DE 19899 | Wilmington, DE 19801 |
| Telephone: (302) 658-9141 | Telephone: (302) 984-6000 |
| kcramer@cblh.com | rhorwitz@potteranderson.com |
| kpoppel@cblh.com | dmoore@potteranderson.com |
| *Attorneys for Plaintiffs* | *Attorneys for Defendant* |

*Of Counsel:*

David A. Manspeizer
Robert J. Gunther, Jr.
WILMER CUTLER PICKERING
HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
Telephone: (212) 230-8800

Ryann M. Muir
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000

*Of Counsel:*

Thomas J. Parker
Natalie C. Clayton
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
Telephone: (212) 210-9444

**SO ORDERED** this 13th day of Sept, 2011.

_____
THE HONORABLE MICHAEL M. BAYLSON
United States District Judge
Eastern District of Pennsylvania

4442691

- 10 -