# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SHIONOGI PHARMA, INC. and<br>CIMA LABS INC.,<br><br>      Plaintiffs,<br><br>    v.<br><br>MYLAN PHARMACEUTICALS INC.,<br><br>      Defendant. | )<br>)<br>)<br>)<br>) C.A. No. 10-1077-MMB<br>)<br>) **JURY TRIAL DEMANDED**<br>)<br>)<br>) |

**MYLAN PHARMACEUTICALS INC.'S
SECOND SET OF PRODUCTION REQUESTS (NOS. 61-91)**

In accordance with Rule 34 of the Federal Rules of Civil Procedure, Defendant Mylan Pharmaceuticals Inc. ("Mylan") requests that Plaintiffs, Shionogi Pharma Inc. and Cima Labs Inc. ("Shionogi" and "Cima," respectively), respond to the following production requests and produce the requested documents and things within thirty (30) days. Shionogi and Cima shall produce the requested documents and things at the offices of Alston & Bird LLP, 90 Park Avenue, New York, New York 10016.

**Definitions and Instructions**

A.  The form of the responses to Mylan's discovery requests shall comply with Rules 26 through 37 of the Federal Rules of Civil Procedure, as applicable.

B.  Mylan's discovery requests shall be deemed to seek responses as of the date they are served. Any additional responsive information, documents, or things that become known to Shionogi and Cima up to and including the time of trial shall be furnished to Mylan within a reasonable time after becoming known. Moreover, if Shionogi and/or Cima acquire any information, documents, or things that require an answer to be enlarged, diminished, or otherwise modified, such information, documents, or things shall be supplied to Mylan within

a reasonable time after they are acquired.

  C.  The phrase "the '341 patent" will mean U.S. Patent No. 6,740,341, entitled "Taste Masking Rapid Release System," which issued on May 25, 2004.

  D.  The phrase "patent in suit" shall mean the '341 patent.

  E.  The term "invention" includes any and every alleged invention or discovery disclosed or claimed in any of the patent-in-suit. By using the term "invention," Mylan does not admit that any of the patent-in-suit are valid or that any of the patent-in-suit disclose or claim a patentable invention.

  F.  The terms "infringe" and "infringement" shall include literal infringement, infringement under the doctrine of equivalents, direct infringement, contributory infringement, and induced infringement.

  G.  The term "Shionogi" shall mean and include Shionogi Pharma Inc., any predecessor or successor company or individual, and any corporation or other business entity (whether or not a separate legal entity) subsidiary to, parent of, or affiliated with Shionogi, as well as all present and former principals, partners, directors, owners, officers, members, employees, agents, representatives, consultants, and attorneys of Shionogi, or any affiliated corporation or business entity controlled by either entity.

  H.  The term "Cima" shall mean and include Cima Labs Inc., any predecessor or successor company or individual, and any corporation or other business entity (whether or not a separate legal entity) subsidiary to, parent of, or affiliated with Cima, Inc., as well as all present and former principals, partners, directors, owners, officers, members, employees, agents, representatives, consultants, and attorneys of Cima, or any affiliated corporation or business entity controlled by either entity.

  I. The term "FDA" shall mean the United States Food and Drug Administration.

  J. The term "PTO" shall mean the United States Patent and Trademark Office.

  K. The term "ANDA 202-179" shall mean the Abbreviated New Drug Application No. 202-179.

  L. The term "NDA 21-959" shall mean the New Drug Application No. 21-959.

  M. The term "Orange Book" shall mean the publication entitled "Approved Drug Products with Therapeutic Equivalence Evaluations."

  N. The term "Orapred ODT®" shall mean the 10-mg, 15-mg, and 30-mg orally disintegrating prednisolone sodium phosphate tablets sold by Shionogi and Cima under the federally registered trademark Orapred ODT®.

  O. The term "document" has the comprehensive meaning in the broadest sense available under Rule 34(a) of the Federal Rules of Civil Procedure, and includes electronically stored information as well as writings, recordings, and photographs as defined in Rule 1001 of the Federal Rules of Evidence.

  P. The term "thing" shall mean any physical specimen or tangible item including but not limited to samples, prototypes, mock-ups, test equipment, production equipment, tools, dies, molds, models, three-dimensional illustrations of physical or chemical phenomena, and montages of physical items.

  Q. The term "concerning" shall mean comprising, containing, constituting, embodying, evidencing, discussing, reflecting, relating to, referring to, or identifying.

  R. The term "communication" shall mean the transfer or transmittal of information (in the form of facts, ideas, inquiries, or otherwise), whether in oral, written, or electronic form.

  S. The terms "possession," "custody," and "control" are used in a comprehensive

sense and refer to possession, custody, or control by anyone or a combination of the following persons or organizations:

    1.    Shionogi Pharma Inc.;

    2.    Cima Labs Inc.

    3.    Any corporation or other entity controlled by or affiliated with or controlling Shionogi Pharma, Inc. and/or Cima Labs Inc. as its wholly owned subsidiary(ies);

    4.    Any principal, officer, employee, agent, representative, or consultant of or for Shionogi Pharma Inc. and/or Cima Labs Inc. or any such controlled or affiliated corporation or entity; and

    5.    Counsel for Shionogi Pharma Inc. or Cima Labs Inc. or any such controlled or affiliated corporation or entity.

    T.    The term "person" shall mean any natural person.

    U.    The term "organization" shall mean any legal or business entity, including but not limited to public and/or private corporations, partnerships, and proprietorships, as well as other legal business entities, e.g., agencies, associations, forms, and trusts, whether domestic or foreign.

    V.    The terms "and" or "or" shall both be read in the conjunctive and in the disjunctive wherever they appear, and neither of these words shall be interpreted to limit the scope of a discovery request. The use of a verb in any tense shall be construed as the use of the verb in all other tenses, and the singular form shall be deemed to include the plural and vice versa.

W. If Shionogi and/or Cima objects to producing and withholds from production any information, documents, or things on grounds of attorney-client privilege, work-product immunity or otherwise, Mylan requests that within thirty (30) days of service of these discovery requests Shionogi and/or Cima provide a privilege log identifying the specific grounds on which the objection rests and the particular request(s) objected to, and identifying any withheld documents, things, or portions thereof as follows:

1. The date of creation;

2. The identity of all persons who prepared and/or signed the document or thing;

3. The general nature of the document or thing (i.e., whether it is a letter, chart, pamphlet, memorandum, etc.);

4. A summary of its contents, or the general subject matter of the document or thing;

5. Its present location and the identity of its current custodian;

6. A listing of all persons, including but not limited to any addressee(s), to whom copies of the document or thing have been disclosed, including the date and means of disclosure; and

7. The nature of the privilege or other rule of law relied on to withhold the document or thing and the facts supporting Shionogi and Cima's assertion thereof.

X. If any documents or things requested to be produced have been lost, discarded, destroyed, or are otherwise unavailable for any reason, they should be identified as completely as possible, by stating without limitation: the pertinent information requested in the preceding

paragraph, the date of disposal, the manner of disposal, the reason for disposal, any person, firm or corporation who has possession, custody, or control of a partial or incomplete copy of such document, and the identity of all persons who participated in the destruction or discarding or who have knowledge of the date and circumstances surrounding the destruction or discarding of the document or thing.

Y.  Mylan requests that any purportedly privileged document containing nonprivileged matter be produced with the purportedly privileged portion excised.

Z.  If Shionogi and/or Cima cannot state with finality its response to a discovery request, Shionogi and/or Cima is requested to so indicate and to respond to such request to the best of its ability in view of the present state of discovery.

AA.  In responding to Mylan's discovery requests, if Shionogi and/or Cima claims any ambiguity in interpreting either a request, a definition, or an instruction, Shionogi and/or Cima shall not use that ambiguity claim as a basis for refusing to respond, but shall instead set forth as part of its response to the discovery request the language deemed to be ambiguous and the interpretation that it has chosen to use in responding to the discovery request.

## Production Requests

### Production Request No. 61

All notes, correspondence, memoranda, and other written records of communications (including "call notes") between Plaintiffs and/or its agents and any managed care organization, pharmacy benefit manager, physician, nurse, pharmacist and/or other medical or medical office personnel concerning, referring to or relating to any prednisolone sodium phosphate product.

**Production Request No. 62**

Each document and thing concerning, referring or relating to data and/or other information showing the uses for which any prednisolone sodium phosphate product is prescribed, used and/or taken, including but not limited to National Drug and Therapeutic Index (NDTI) data for any prednisolone sodium phosphate product.

**Production Request No. 63**

Each document and thing concerning, referring or relating to data and/or other information showing the uses for which any orally disintegrating pharmaceutical is prescribed, used and/or taken, including but not limited to National Drug and Therapeutic Index (NDTI) data for such products.

**Production Request No. 64**

Each document and thing concerning, referring or relating to data and/or other information showing the uses for which any taste-masking pharmaceutical is prescribed, used and/or taken, including but not limited to National Drug and Therapeutic Index (NDTI) data for such products.

**Production Request No. 65**

Each document and thing that relates in any way to the benefits, qualities, features, advantages or disadvantages of a prednisolone sodium phosphate drug,

**Production Request No. 66**

Each document and thing that relates in any way to the benefits, qualities, features, advantages or disadvantages of the delivery mechanism or method of administration of any prednisolone sodium phosphate drug, including orally disintegrating or taste-masking formulations of such product.

**Production Request No. 67**

Each document or thing concerning to Mylan's prednisolone sodium phosphate tablets described in ANDA 202-179.

**Production Request No. 68**

Each document or thing related to actual or proposed generic versions of Orapred ODT®, including but not limited to documents related to or concerning any party's Notice of Paragraph IV Certification to Plaintiffs.

**Production Request No. 69**

Each document and thing concerning the actual or anticipated consumer demand, preferences, behavior, interest or market for Orapred ODT®, generic versions of Orapred ODT®, or any other prednisolone sodium phosphate drug, including documents and things describing such topics in relation to different delivery mechanisms or methods of administration such as taste-masking or orally disintegrating products.

**Production Request No. 70**

Each document and thing analyzing or discussing actual or potential competition between Orapred ODT® and any other pharmaceutical product or products.

**Production Request No. 71**

Each document and thing analyzing or discussing the effect of the introduction of generic versions of Orapred ODT® on the price and sales of Orapred ODT®.

**Production Request No. 72**

Each document and thing analyzing or discussing the effect of the introduction of generic drugs on the prices and/or sales of a branded drug.

**Production Request No. 73**

Each document and thing analyzing or discussing the effect of the introduction of generic versions of any prednisolone sodium phosphate product on current and/or future prices and/or sales of Orapred ODT®.

**Production Request No. 74**

All studies, analyses, reports or other documents discussing, describing or referring to the actual or potential commercial success of Orapred ODT® or any prednisolone sodium phosphate product.

**Production Request No. 75**

Each document and thing concerning any business plans, commercial or financial analyses, market research or sales forecasts prepared by or for Plaintiffs concerning any prednisolone sodium phosphate product, including those concerning the entry of a generic version of any prednisolone sodium phosphate product and any such generic products to be affiliated in any way with Plaintiffs.

**Production Request No. 76**

Each document and thing you believe supports or evidences the actual or potential substitutability of other products for orally disintegrating prednisolone sodium phosphate products, or different formulations, delivery mechanism or methods of administration of such products.

**Production Request No. 77**

Each document and thing evidencing the geographic area for which the FDA approved the marketing and sale of products under NDA 21-959 and any limitations or constraints, whether actual or potential, upon the marketing of such product within that area.

**Production Request No. 78**

Each document and thing evidencing the basis and support for any contention by Plaintiffs that the relevant product and geographic markets relevant to Mylan's antitrust counterclaims are different from those alleged in Mylan's counterclaims.

**Production Request No. 79**

Each document and thing relating to the business segment or segments for orally disintegrating or taste-masking pharmaceuticals, including but not limited to market reports, surveys, summaries or other analyses of market trends and activities concerning such topics as market shares, market segments, profits, margins, consumer preferences, consumer demand or behavior, actual or potential competition or competitors, alternative or substitute products and barriers to entry.

**Production Request No. 80**

Each document and thing, including but not limited to promotion materials, related to encouraging providers, end-users or other entities to switch from any other medication to Orapred ODT®, including documents relating to discount coupons or other financial incentives.

**Production Request No. 81**

All documents, including business plans and marketing plans, relating to the production, distribution, marketing, pricing and sale of any generic versions of Orapred ODT®, including but not limited to all documents and things analyzing or discussing the actual and projected sales (in dollars and units) of a generic version of the taste-masking drug.

**Production Request No. 82**

Each document and thing concerning Plaintiffs' tax returns, balance sheets, and profit and loss statements since June 1, 2006.

**Production Request No. 83**

All quarterly, semiannual and annual financial reports of Plaintiffs since June 1, 2006 including but not limited to their filings with the Securities Exchange Commission.

**Production Request No. 84**

Each document and thing relating to the communications between Shionogi and Cima concerning orally disintegrating prednisolone sodium phosphate products, including those relating to their business and financial relationships concerning such products, whether actual or potential, and their coordination of business and legal activities to maintain their market share and patent protection for such products.

**Production Request No. 85**

Each document and thing representing, constituting, or relating to the terms of the exclusive license agreement between Plaintiffs, including but not limited to documents and things concerning the allocation of liabilities, and indemnification of rights, between the entities involved in or associated with these transactions whether or not included in such agreements.

**Production Request No. 86**

Each document and thing related to the effect of the Plaintiffs' exclusive license agreement concerning Orapred ODT® on market shares, competition, competitors, markets, potential for sales growth or expansion into product or geographic markets concerning taste-masking medication.

**Production Request No. 87**

Each document and thing concerning Plaintiffs' corporate structures, including all organizational charts and documents sufficient to identify Plaintiffs' scientists, managers, executives, directors and board members since June 1, 2006.

**Production Request No. 88**

Each document and thing representing, constituting, or relating to the terms of any proposed or actual agreement between Plaintiffs and any individual, company, or other entity, including but not limited to wholesalers, hospitals, pharmacy benefit managers, health maintenance organizations, insurance companies, military/government entities, and Medicaid, for the sale, marketing, or distribution of any prednisolone sodium phosphate product, including Orapred ODT®.

**Production Request No. 89**

All of Plaintiffs' compliance policies, manuals and training materials concerning United States antitrust and competition law in effect or utilized since January 1, 2000, as well as all records of acknowledgment, receipt, completion or other correspondence and documents concerning issues related to such compliance policies or training for Plaintiffs' employees involved in the consideration and institution of this case.

**Production Request No. 90**

Each document and thing relating in any way to communications with any expert or consultant retained in connection with Orapred ODT® or generic versions of such drug.

**Production Request No. 91**

Each document and thing analyzing or discussing the pricing and marketing strategies Plaintiffs would pursue for Orapred ODT® if it lost patent protection.

- 13 –

|  |  |
|---|---|
|  | POTTER ANDERSON & CORROON LLP |
| OF COUNSEL: | By: */s/ David E. Moore* |
|  | Richard L. Horwitz (#2246) |
| Thomas J. Parker | David E. Moore (#3983) |
| Natalie C. Clayton | Hercules Plaza, 6th Floor |
| ALSTON & BIRD LLP | 1313 N. Market Street |
| 90 Park Avenue | Wilmington, DE  19801 |
| New York, NY 10016 | Tel:  (302) 984-6000 |
| Tel: 212-210-9444 | rhorwitz@potteranderson.com |
|  | dmoore@potteranderson.com |
| Dated:  April 28, 2011 |  |
| 1010874 / 36324 | *Attorneys for Defendant Mylan Pharmaceuticals Inc.* |

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on April 28, 2011, true and correct copies of the within document were served on the following counsel of record at the addresses and in the manner indicated:

**VIA HAND DELIVERY**

Kristen Healey Cramer
Karen R. Poppel
Connolly Bove Lodge and Hutz LLP
1007 N. Orange Street
Wilmington, DE  19899
kcramer@cblh.com
kpoppel@cblh.com

**VIA ELECTRONIC MAIL**

Kristen Healey Cramer
Karen R. Poppel
Connolly Bove Lodge and Hutz LLP
1007 N. Orange Street
Wilmington, DE  19899
kcramer@cblh.com
kpoppel@cblh.com

J. Mark Gidley
Noah A. Brumfield
White & Case LLP
701 Thirteenth Street, N.W.
Washington, DC  20005
(202) 626-3600
mgidley@whitecase.com
noah.brumfield@whitecase.com

Bruce M. Wexler
Joseph M. O'Malley, Jr.
Melanie R. Rupert
Alyssa D. Klapper
Paul, Hastings, Janofsky & Walker LLP
75 East 55th Street
New York, NY  10022
brucewexler@paulhastings.com
josephomalley@paulhastings.com
melanierupert@paulhastings.com
alyssaklapper@paulhastings.com

                                          */s/ David E. Moore*
                                          David E. Moore

1006664 / 36324