\IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SHIONOGI PHARMA, INC.
AND CIMA LABS INC.,

Plaintiffs,

v.

MYLAN PHARMACEUTICALS INC.,

Defendant.

C. A. No. 10-1077 (MMB)

**MYLAN PHARMACEUTICALS INC.'S MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR AN AMENDED SCHEDULING ORDER (D.I. 86)**

OF COUNSEL:

Thomas J. Parker
Natalie C. Clayton
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
Tel: 212-210-9444

Dated:   October 17, 2011
1031568 / 36324

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant Mylan
Pharmaceuticals Inc.*

# TABLE OF CONTENTS

I.     BACKGROUND AND NATURE OF THE CASE ............................................1

    A. Plaintiffs' Meritless Infringement Action.......................................1

    B. Plaintiffs' Attempts to Delay Adjudication of Mylan's Claims.....................2

    C. Governing Legal Standards ...........................................................4

II.    SUMMARY OF ARGUMENTS.........................................................................4

III.   PLAINTIFFS' PROPOSED SCHEDULE SHOULD BE REJECTED
    BECAUSE IT IS UNWORKABLE AND IMPRACTICAL ...............................4

IV.    PLAINTIFFS' PROPOSED SCHEDULE IS BASED ON THE FLAWED
    ASSUMPTION THAT MYLAN'S ANTITRUST CLAIM IS MERITLESS .....7

V.     COURTS ROUTINELY PROVIDE FOR CONCURRENT ANTITRUST AND
    PATENT DISCOVERY ...............................................................................10

VI.    CONCLUSION ...........................................................................................12

## TABLE OF AUTHORITIES

**Cases**

*Applied Biosystems, Inc. v. Cruachem, Inc.*, C.A. No. 89-579-JRR,
   1990 WL 495458 (D. Del. Aug. 3, 1990)...................................................................10

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)...................................................................7

*Baldwin Hardware Corp. v. Franksu Enters. Corp.*, 18 U.S.P.Q.2d 1252 (C.D. Cal. 1990) .......10

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007)........................................................ 6-7

*Dentsply Int'l, Inc. v. New Tech. Co.*, C.A. No. 96-272 MMS,
   1996 WL 756766 (D. Del. Dec. 19, 1996) ...............................................................10

*eBay Inc. v. Bidder's Edge Inc.*, No. C-99-21200 RMW,
   2000 WL 1863564 (N.D. Cal. July 25, 2000) ..........................................................10

*Hoffman-LaRoche, Inc. v. Genpharm, Inc.*, 50 F. Supp. 2d 367 (D.N.J. 1999) ...........................5

*In re Innotron Diagnostics*, 800 F.2d 1077 (Fed. Cir. 1986) ...........................................11

*Masimo Corp. v. Philips Elect. N. Am. Corp.*, C.A. No. 08-80,
   2010 WL 925864  (D. Del. Mar. 11, 2010)...............................................................11

*Nabi Biopharms. v. Roxane Labs., Inc.*, No. 2:05-CV-889,
   2007 WL 894473 (S.D. Ohio Mar. 21, 2007) ..........................................................10

*SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*, No. 11-cv-01468-WJM-BNB,
   2011 WL 4018207 (D. Colo. Sept. 8, 2011) ........................................................4, 10

**Rules**

Fed. R. Civ. P. 16(b)....................................................................................4

Fed. R. Civ. P. 26(d)....................................................................................4

Fed. R. Civ. P. 42(a)....................................................................................4

## I.   BACKGROUND AND NATURE OF THE CASE

Plaintiffs brought this patent infringement suit to improperly delay Mylan's proposed medicine from coming to market, and their motion to amend the Court's scheduling order is nothing more than another dilatory tactic.

### A.   Plaintiffs' Meritless Infringement Action

As recounted more fully in response to Plaintiffs' unsuccessful motion to dismiss Mylan Pharmaceuticals Inc.'s ("Mylan") antitrust counterclaim,[1] in October 2010 Mylan informed Plaintiffs that it intended to manufacture and sell a generic prednisolone sodium phosphate orally disintegrating tablet, explained why its ANDA product does not infringe Plaintiffs' '341 Patent, and offered Plaintiffs access to Mylan's confidential information and product samples so that Plaintiffs could confirm for themselves that Mylan's ANDA product does not infringe.  Plaintiffs took Mylan up on its offer for access to the relevant confidential information.  But, despite having all the relevant and material facts in its possession demonstrating Mylan's noninfringement of the '341 Patent, Plaintiffs filed their Complaint in December 2010 asserting infringement of the '341 Patent and triggering an automatic 30-month stay on final approval of Mylan's drug by the Food and Drug Administration under the Hatch-Waxman Act.

Critically, the '341 Patent requires three separate and distinct layers in a pharmaceutical formulation:  a drug containing core, a spacing layer, and a taste masking layer.  Mylan's accused product, however, does not have all of the claimed layers and there are no objectively reasonable grounds to contend it does.  Given these facts, Mylan asserted an antitrust counterclaim based on Plaintiffs' institution of their sham litigation.

---

[1] *See* Mylan's Opposition to Plaintiffs' Motion to Dismiss (D.I. 60 *filed* July 28, 2011).

**B.    Plaintiffs' Attempts to Delay Adjudication of Mylan's Claims**

In the ensuing ten months, Plaintiffs have used every tool at their disposal to avoid confronting the consequences of their improper actions, either by moving to dismiss these antitrust claims at the pleading stage (which was unsuccessful) or to stymie Mylan's legitimate efforts to proceed with discovery (which so far have been successful). Under the Court's April 1, 2011, Scheduling Order, the parties were ordered to have substantially completed document production by October 6, 2011.[2] That Scheduling Order then envisions completion of all other fact discovery within five months, sequenced expert discovery and summary judgment proceedings, and trial in this case in December 2012.

In September 2011, both Plaintiffs and Mylan proposed alternatives to the current schedule that would bifurcate both discovery and trial. Those proposed schedules would have resolved certain patent issues early in 2012, with discovery and trial on antitrust issues following later in 2012 and potentially 2013. The Court then held a pretrial conference during which it provided certain guidelines about the Court's calendar, including a request for keeping the trial on all issues in 2012. The Court then allowed the parties a further opportunity to confer on alternatives to their September proposals.

After that conference, Plaintiffs raised for the very first time the scheduling proposal addressed in the current motion. Plaintiffs have now moved to further postpone completing antitrust document discovery until July 2012 and further seek to essentially compress antitrust-related document review and depositions into less than one month.

---

[2]  Plaintiffs claim to have substantially completed their document production for patent-related documents, but not for antitrust-related documents. Mylan's antitrust related document requests were served on Plaintiffs in April 2011. Mylan has substantially completed its document production for all timely served requests. Additionally, Plaintiffs served 56 additional requests for documents eight days before the document production deadline. Mylan is in the process of responding to those requests.

The current schedule and Plaintiffs' alternative proposal are compared below:

| | Current Schedule | Plaintiffs' Proposed Schedule | |
| --- | --- | --- | --- |
| | | Patent Issues | Antitrust Issues |
| **Time to substantial completion of document production** | 4/1/11 to 10/6/11<br>6.3 months | 4/1/11 to 10/6/11<br>6.3 months | 5/1/12 to 7/2/12[3]<br>2 months |
| **Non-document related discovery** | 10/6/11 to 2/22/12<br>4.6 months | 10/6/11 to 2/1/12<br>4 months | 7/2/12 to 7/31/12<br>29 days |
| **Time from close of fact discovery to initial expert reports** | 2/22/12 to 4/19/12<br>1.9 months | 2/1/12 to 3/16/12<br>1.5 months | 7/31/12 to 8/14/12<br>14 days |
| **Time from initial expert reports to rebuttal expert reports** | 4/19/12 to 5/31/12<br>1.4 months | 3/16/12 to 5/1/12<br>1.5 months | 8/14/12 to 9/3/12<br>20 days |
| **Expert deposition timeframe** | 5/31/12 to 8/2/12<br>2.1 months | 5/1/12 to 6/15/12<br>1.5 months | 9/3/12 to 9/21/12<br>18 days |
| **Summary judgment opening briefs** | 8/2/12 to 9/13/12<br>1.4 months | 6/15/12 to 10/1/12<br>3.6 months | 9/21/12 to 10/1/12<br>10 days |

Plaintiffs' chief rationale for their proposal is that such antitrust discovery is so voluminous, time consuming, and expensive, that it should be deferred until after Plaintiffs may file a potential summary judgment motion in March of next year. Because such efficiencies are speculative, and likely illusory, Mylan opposes Plaintiffs' motion and, in light of the Court's guidelines during the September conference, prefers the current schedule established by the April 1, 2011, Scheduling Order.[4]

---

[3] Plaintiffs' proposed schedule would implicitly defer the bulk of such discovery until after a ruling on its proposed March 2012 summary judgment motion. Based on the guidelines articulated by the Court during the September 2011 scheduling conference, such a ruling would likely occur in May 2012.

[4] Of course, given the passage of the October 6, 2011 document production deadline, the Scheduling Order should be interpreted to allow the parties to move forward with antitrust document production immediately so that all such production, as well as deposition testimony, can be completed prior to the February 22, 2012, fact discovery deadline.

### C.   Governing Legal Standards

Under Federal Rule of Civil Procedure 16(b), 26(d) and 42(a), the Court of course has the authority to modify its Scheduling Order and issue necessary orders concerning discovery.  But Plaintiffs must demonstrate good cause furthering the interests of the efficient adjudication of the relevant claims for doing so, a burden they have not satisfied.[5]

## II.    SUMMARY OF ARGUMENTS

- Plaintiffs' proposed schedule should be denied as impractical and unworkable because it essentially compresses all antitrust discovery into only 29 days.

- Plaintiffs' proposed schedule should be denied because they have not made a particularized showing either that it is likely to prevail on the issue of whether its decision to assert infringement of the '341 Patent was objectively reasonable or that deferring antitrust discovery in this case is significantly more efficient.

- The authority cited in Plaintiffs' motion should be disregarded because it is limited to cases where trial on the patent and antitrust issues was bifurcated, unlike the consolidated trial schedule suggested by the Court and contained in Plaintiffs' proposal.  Furthermore, regardless of bifurcated trials, there is no automatic presumption in favor of sequencing patent and antitrust discovery.

## III.   PLAINTIFFS' PROPOSED SCHEDULE SHOULD BE REJECTED BECAUSE IT IS IMPRACTICAL AND UNWORKABLE

Plaintiffs' principal argument for deferring and compressing antitrust discovery is that time-consuming discovery should be deferred if there is a possibility that a summary judgment

---

[5] *SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*, No. 11-cv-01468-WJM-BNB, 2011 WL 4018207 at *2 (D. Colo. Sept. 8, 2011) (citing five factors to considered when making this determination: "(1) the interest of the plaintiff in proceeding expeditiously with the civil action and the potential prejudice to plaintiffs of a delay; (2) the burden on the defendants; (3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.").

4

ruling might obviate the need for such discovery. Regardless of the merits of sequencing patent and antitrust discovery in the abstract, Plaintiffs' proposed plan is unworkable and impractical; especially since Plaintiffs stress the non-trivial nature and extent of antitrust-related discovery in their motion. Critically, that plan would compress virtually all antitrust document review and deposition testimony into 29 days of July 2012, even though this case has been pending since 2010.

While Plaintiffs' opening brief mentions a rolling production of antitrust-related documents leading to a July 2, 2012, deadline for completion of their antitrust-related document production, the reality of Plaintiffs' proposed schedule is that very few of such documents are likely to be produced before the deadline. In fact, Plaintiffs claim that one of the big advantages of their proposal is that they will not need to engage in significant antitrust-related discovery until after the Court rules on a March 2012 summary judgment sometime in May 2012, thereby possibly avoiding the expense of such discovery. Consequently, Mylan expects Plaintiffs will defer gathering and processing the vast majority of antitrust-related documents until after May 2012; otherwise there is no potential for significant efficiencies under Plaintiffs' proposal. As is discussed below, this delay is unnecessary and inefficient. After all, Plaintiffs' suggested summary judgment motion is itself a motion about an element of the *antitrust* claim, not identical to the patent claim,[6] so their proposed schedule would invite disputes about Plaintiffs' selective and incomplete production of documents that could even prevent resolution of their envisioned dispositive motion.

---

[6] "The resolution of whether plaintiffs' suit is objectively baseless as to [the defendant] involves the determination of whether plaintiffs undertook a reasonable investigation before filing suit, whether plaintiffs knew or should have known that [the defendant] had not infringed the . . . patent, and whether a reasonable litigant could have realistically expected success on the merits

5

Importantly, Plaintiffs also propose replacing the currently scheduled four and a half months intended for antitrust discovery following document production (which has not yet been done)[7] with less than one month of discovery.  While the current schedule is tight, Plaintiffs' proposed schedule would force Mylan to review the entirety of Plaintiffs' antitrust-related document production *and* depose all relevant witnesses in less than a month (as, of course, it is inefficient to engage in antitrust-related depositions until after review of all antitrust-related documents).  Such a schedule is unworkable and impractical.  Additionally, Plaintiffs' proposed schedule would completely foreclose Mylan from pursuing any follow-up written discovery based on Plaintiffs' document production because Mylan would not receive Plaintiffs' documents until after it was too late to serve follow-up written interrogatories or requests for admissions, nor would any third-party discovery be able to be informed by Plaintiffs' production.

Similarly, Plaintiffs' proposed timetables for expert discovery provide for incredibly short periods for Mylan to digest the entirety of fact discovery and prepare substantive expert reports.  That timetable is prejudicial since Mylan will only have 14 days to digest all antitrust-related fact discovery and prepare its expert reports, especially since those reports will draw heavily on information first produced by Plaintiffs less than one month earlier.[8]  It simply is illogical for Plaintiffs to assert antitrust discovery is complex and burdensome but to then suggest it should be unnecessarily compressed into a minimal period of time.  Accordingly,

---

at the time the suit was filed." *Hoffman-LaRoche, Inc. v. Genpharm, Inc.*, 50 F. Supp. 2d 367, 380 (D.N.J. 1999).

[7] Plaintiffs' have already prejudiced Mylan by their unilateral failure to comply with the Court's deadline for substantial completion of discovery by October 6, 2011.  Consequently, Mylan will likely have less than three months for antitrust-related fact discovery even under the current schedule.

[8] Notably, however, Plaintiffs' proposed schedule would give themselves three weeks to prepare their expert reports instead of the two given to Mylan, further compounding Mylan's prejudice.

Plaintiffs' proposed schedule would deny Mylan a full and fair opportunity to seek discovery on the relevant antitrust-related facts and prepare its case. For this reason alone, Plaintiffs' motion seeking to amend the schedule should be denied.

### IV.   PLAINTIFFS' PROPOSED SCHEDULE IS BASED ON THE FLAWED ASSUMPTION THAT MYLAN'S ANTITRUST CLAIM IS MERITLESS

Plaintiffs' proposed schedule appears to justify the prejudice it inflicts on Mylan based on an unarticulated assumption that Mylan's antitrust claim requires such an impossibly high burden of proof that Mylan will never be able to satisfy it and the claim will be dismissed in response to their summary judgment motion promised next spring. Nothing could be further from the truth. In fact, this unarticulated assumption is little more than a regurgitation of the arguments Plaintiffs previously raised at the pleading stage that were rejected in the Court's August 31, 2011, Memorandum Opinion (D.I. 67). Under the Supreme Court's rulings in *Bell Atlantic v. Twombly*[9] and *Ashcroft v. Iqbal*,[10] this Court found that Mylan *had* alleged facts sufficient to establish the plausibility of its antitrust counterclaim, *including* that Plaintiffs' suit constituted objectively baseless and subjectively motivated sham litigation. (*Id.* at 10-12). Furthermore, the Court observed that "[o]nly after discovery will it be possible to determine whether Counter-Defendants' infringement suit is founded." (*Id.* at 12). Thus, it is simply incorrect to treat the antitrust counterclaim here as something to be regarded as frivolous, unworthy of full discovery on the merits, and able to be delayed without good cause.

As discussed in the motion to dismiss briefing, Plaintiffs' infringement claim is baseless. Both independent claims of the asserted '341 Patent require three separate and distinct layers: a

---

[9] 550 U.S. 544 (2007).

[10] 129 S.Ct. 1937 (2009).

drug-containing core, a spacing layer, and a taste masking layer, as shown in exemplary claim 1

below:

> 1. A taste masked formulation which rapidly releases a drug in the stomach of a patient comprising:
>
>    a **drug-containing core**;
>
>    a **taste masking layer** having a thickness of between about 5 and about 75 microns composed of a material which is generally insoluble in saliva at a neutral to basic pH and completely soluble in saliva at a pH of less than about 6.5, and
>
>    a **spacing layer** having a thickness of between about 5 and about 75 microns surrounding said core and substantially completely sequestering said core from said taste masking layer and being capable of rapidly exposing said core when exposed in the stomach of a patient;
>
>    said taste masking layer preventing exposure of said spacing layer in the mouth of a patient for a period of at least about 20 seconds after being placed into the mouth and being capable of rapidly exposing said spacing layer when in the stomach of a patient;
>
>    wherein the taste masked formulation disintegrates in the mouth of a patient in less than 90 seconds to form a suspension of particles; wherein the coated drug containing core generally has a diameter of no larger than 1,500 microns

Critically, the '341 Patent specifically identifies these three layers, and the spacing layer in

particular, as being important parts of its invention:

> Using a spacing layer to substantially sequester the drug from the taste masking layer helps reduce or eliminate such coating imperfections. It also acts to delay contact between the drug and the taste buds of a patient upon partial or total failure of the taste masking layer in the patient's mouth.

('341 Patent at 3:5-10), and

> Preferably, the spacing layer can provide some additional taste masking in the eventuality that the taste masking layer is compromised by, for example, chewing, extended exposure to saliva in the mouth, excessively acidic saliva, or coating imperfections. For some particularly obnoxious drugs, seconds can count and the taste masking ability of the spacing layer can play an integral part in preventing the exposure of a patient to a particularly objectionable medication.

('341 Patent at 7:10-18.)  Because Mylan's accused product does not have the required spacing layer,[11] there is no objectively reasonable basis for Plaintiffs to assert infringement.

Indeed, Mylan explained its noninfringement position in detail and provided Plaintiffs both Mylan's confidential documents describing the accused product and samples of the ANDA product before Plaintiffs brought suit.  While Plaintiffs' motion to amend the schedule assumes they can file a March 2012 summary judgment motion demonstrating an objectively reasonable infringement argument, Plaintiffs have never articulated that argument or pointed to any evidence of a spacing layer in Mylan's accused product.

Consequently, Plaintiffs have failed to present any particularized showing why deferring antitrust discovery in this case will be more efficient or less costly.  The remote possibility that Plaintiffs *may* raise some previously unarticulated infringement theory *sometime* next year that *might* dispose of the antitrust issues is an insufficient justification for deferring discovery on antitrust issues and significantly shortening the discovery period on that issue.  This is particularly true when, as here, the case has already been pending since 2010 and discovery into the antitrust issues should be significantly advanced.  And, of course, if Plaintiffs fail to prevail on the suggested March 2012 summary judgment motion, as Mylan believes they will, the intervening time in which antitrust discovery could have been taken would have been wasted, certain witnesses may need to be re-deposed, and the envisioned completion of discovery, expert discovery and a combined trial by the end of 2012 jeopardized.[12]

---

[11] The structure of Mylan's accused product is further explained in its July 28, 2011 Opposition to Plaintiffs' Motion to Dismiss (D.I. 60) at page 11.

[12] Plaintiffs also argue, as they did unsuccessfully in their motion to dismiss Mylan's amended Section 2 counterclaim, that the viability of Mylan's sham litigation claim is somehow altered by previous cases involving Mylan. (*See* D.I. 57; D.I. 86).  But Mylan's litigation history is irrelevant, as every case must stand on its own, and the elements of sham litigation do not change

## V.   COURTS ROUTINELY PROVIDE FOR CONCURRENT ANTITRUST AND PATENT DISCOVERY

Plaintiffs incorrectly suggest that courts presumptively stay antitrust discovery in patent cases involving antitrust or sham litigation counterclaims. The cases Plaintiffs rely on also involved motions to bifurcate trial of antitrust and patent issues, unlike here where Plaintiffs seek a stay *in the absence of* trial bifurcation.

While sequencing patent and antitrust discovery may be appropriate in bifurcated cases, where the antitrust trial occurs *after* the patent trial,[13] Plaintiffs' schedule proposes a concurrent trial on both antitrust and patent issues before the end of 2012. As such, those cases provide little guidance on whether to sequence and significantly limit antitrust discovery when the issues are tried concurrently. In fact, in the absence of bifurcation or severance of antitrust and patent claims, courts often refuse to stay antitrust discovery.[14] Even in bifurcated cases, however, courts still often refuse to sequence discovery as requested in Plaintiffs' proposal.[15]

---

based on the litigant. Accordingly, this argument has no bearing on the Court's decision on the instant motion.

[13] This was one of the motivating factors in Mylan's abandoned September proposal that would have led to a first trial on limited patent issues, followed by discovery and a second trial on the remaining patent and antitrust issues.

[14] *See, e.g., Nabi Biopharms. v. Roxane Labs., Inc.*, No. 2:05-CV-889, 2007 WL 894473, at *8 (S.D. Ohio Mar. 21, 2007) (denying motion to sever antitrust counterclaim in Hatch-Waxman case and "[i]n turn, the Court decline[d] to issue a four month stay of the [antitrust counterclaim]"); *eBay Inc. v. Bidder's Edge Inc.*, No. C-99-21200 RMW, 2000 WL 1863564, at *4 (N.D. Cal. July 25, 2000) (refusing to bifurcate trial and stay discovery on sham litigation counterclaim "where complete discovery will educate the parties on the strengths and weaknesses of their positions and facilitate settlement").

[15] *See, e.g., Dentsply Int'l, Inc. v. New Tech. Co.*, C.A. No. 96-272 MMS, 1996 WL 756766 at *5-6 (D. Del. Dec. 19, 1996) (stating, "The Court is skeptical about plaintiffs' concern about expense; after all, they brought the suit and are asking for discovery in their own right. Moreover, they should have expected an antitrust counterclaim, now commonplace in patent litigation. More importantly, a stay of discovery on antitrust issues would most likely devolve into a series of time-consuming and expensive discovery disputes as to whether particular

Refusing to sequence discovery as Plaintiffs suggest is especially appropriate where, as here, those seeking the stay fail "to make a particular and specific demonstration of the facts in support of the claimed need for a stay."[16]  In particular, the necessary antitrust discovery in the single-theory counterclaim here, while requiring certain proofs different from patent discovery, does not raise the same concerns of burdensome discovery and inefficiency as in the complicated multi-theory patent/antitrust cases cited by Plaintiffs.[17]

The limited nature of Mylan's antitrust allegations is confirmed by Plaintiffs' own scheduling proposal.  That proposal envisions discovery on the antitrust issues only requiring one quarter of the time necessary for the patent issues.  While Mylan believes the antitrust issues will require more than the 29 days of post-document production discovery allotted in Plaintiffs' proposed schedule, that schedule rebuts Plaintiffs' suggestion that antitrust discovery in this case will be an interminable quagmire.  Moreover, if Plaintiffs truly felt so strongly about the benefits of sequencing antitrust discovery in this case, it should have raised that issue early in this case,

---

discovery is directed at the patent or antitrust claims.  Efficiency dictates that discovery on all claims, including the antitrust counterclaims, continue apace."); *Applied Biosystems, Inc. v. Cruachem, Inc.*, C.A. No. 89-579-JRR, 1990 WL 495458 at *3 (D. Del. Aug. 3, 1990) (refusing to stay antitrust discovery even though the case was bifurcated because (i) the antitrust defendants could not show that the number of depositions would be reduced as a result of staying antitrust discovery because "[t]he vast majority of deposition witnesses will give testimony relevant to both patent and antitrust issues"; and (ii) "a stay of antitrust discovery will merely serve to multiply discovery disputes inordinately" because the parties will argue over "what is 'antitrust-related' discovery."); *Baldwin Hardware Corp. v. Franksu Enters. Corp.*, 18 U.S.P.Q.2d 1252, 1254 (C.D. Cal. 1990) (refusing to stay discovery despite grant of motion for bifurcation).

[16] *SOLIDFX, LLC,* 2011 WL 4018207 at *3  (denying stay of discovery while a motion to dismiss was pending).

[17] *See In re Innotron Diagnostics*, 800 F.2d 1077 (Fed. Cir. 1986) (severing antitrust claims in case involving Sherman Act Section 1 *and* Section 2 claims alleging tying, bundling, *and* exclusionary conduct); *Masimo Corp. v. Philips Elect. N. Am. Corp.*, C.A. No. 08-80, 2010 WL 925864, at *1 (D. Del. Mar. 11, 2010) (staying discovery in conjunction with bifurcation of seven different antitrust counterclaims based on four different categories of misconduct).

contemporaneously with the Court's April 1, 2011 Scheduling Order, not one week before it was required to have substantially completed its document production on antitrust issues.

## VI.    CONCLUSION

Because Plaintiffs' proposal to compress post-document production antitrust discovery into 29 days in the middle of next year is unworkable, inflicts significant prejudice on Mylan, and would not result in meaningful efficiencies, it should be denied.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By:    */s/ David E. Moore*
       Richard L. Horwitz (#2246)

Thomas J. Parker
Natalie C. Clayton
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
Tel: 212-210-9444

David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

Dated:  October 17, 2011
1031568 / 36324

*Attorneys for Defendant Mylan
Pharmaceuticals Inc.*

12

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on October 17, 2011, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

I further certify that on October 17, 2011, the attached document was Electronically

Mailed to the following person(s):

Kristen Healey Cramer
Karen R. Poppel
Connolly Bove Lodge and Hutz LLP
1007 N. Orange Street
Wilmington, DE 19899
kcramer@cblh.com
kpoppel@cblh.com

J. Mark Gidley
Noah A. Brumfield
White & Case LLP
701 Thirteenth Street, N.W.
Washington, DC 20005
(202) 626-3600
mgidley@whitecase.com
noah.brumfield@whitecase.com

David A. Manspeizer
Robert J. Gunther, Jr.
Jane M. Love
Anne-Marie C. Yvon
WilmerHale
399 Park Avenue
New York, NY 10022
David.manspeizer@wilmerhale.com
Robert.gunther@wilmerhale.com
Jane.love@wilmerhale.com
Anne-marie.yvon@wilmerhale.com

Ryann M. Muir
WilmerHale
60 State Street
Boston, MA 02109
Ryann.muir@wilmerhale.com

By:  */s/ David E. Moore*
　　　Richard L. Horwitz
　　　David E. Moore
　　　POTTER ANDERSON & CORROON LLP
　　　Tel: (302) 984-6000
　　　rhorwitz@potteranderson.com
　　　dmoore@potteranderson.com

993789/36324