**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SHIONOGI PHARMA, INC. and<br>CIMA LABS INC.,<br><br>       Plaintiffs,<br><br>  v.<br><br>MYLAN PHARMACEUTICALS INC.,<br><br>       Defendant. | C.A. No. 10-1077-MMB |

<u>**SHIONOGI PHARMA, INC. AND CIMA LABS INC.'S
RESPONSIVE CLAIM CONSTRUCTION BRIEF**</u>

*Of Counsel:*

David A. Manspeizer
Robert J. Gunther, Jr.
Jane M. Love
Anne-Marie C. Yvon
WILMERHALE
399 Park Avenue
New York, NY 10022
Telephone: (212) 230-8800
david.manspeizer@wilmerhale.com
robert.gunther@wilmerhale.com
jane.love@wilmerhale.com
anne-marie.yvon@wilmerhale.com

Ryann M. Muir
WILMERHALE
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
ryann.muir@wilmerhale.com

*Attorneys for Plaintiffs / Counter-Defendants
Shionogi Pharma, Inc. and CIMA LABS INC.*

Kristen Healey Cramer (#4512)
Karen R. Poppel (#5373)
CONNOLLY BOVE LODGE & HUTZ LLP
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
Telephone: (302) 658-9141
kcramer@cblh.com
kpoppel@cblh.com

*Attorneys for Plaintiffs / Counter-
Defendants Shionogi Pharma, Inc. and
CIMA LABS INC.*

J. Mark Gidley
Eric Grannon
Noah A. Brumfield
Jaime Crowe
WHITE & CASE LLP
701 Thirteenth Street, N.W.
Washington, DC 20005
Telephone:  (202) 626-3600
mgidley@whitecase.com
egrannon@whitecase.com
nbrumfield@whitecase.com
jcrowe@whitecase.com

*Attorneys for Plaintiff / Counter-Defendant*
*Shionogi Pharma, Inc.*


Dated:  November 17, 2011

**TABLE OF CONTENTS**

I.      INTRODUCTION ..........................................................................................1

II.     MYLAN'S FLAWED CONSTRUCTIONS......................................................1

     A.      "Drug-Containing Core" ....................................................................1

     B.      "Spacing Layer"..................................................................................4

     C.      "Said Spacing Layer Surrounding Said Core and Substantially Completely Sequestering Said Core from Said Taste Masking Layer" .....................................7

     D.      "Cores of Coated Particles" ...............................................................8

     E.      "Taste Masking Layer" .......................................................................9

     F.      Overlapping Terms from Independent Claims 1 and 9.........................10

III.    CONCLUSION.............................................................................................10

# TABLE OF CITATIONS

<u>Federal Cases</u>

*ACTV, Inc. v. Walt Disney Co.*,
    346 F.3d 1082 (Fed. Cir. 2003) .................................................................................. 9

*AFG Indus., Inc. v. Cardinal Ig Co.*,
    375 F.3d 1367 (Fed. Cir. 2004) .................................................................................. 6

*Astra Aktiebolag v. Andrx Pharms., Inc.*,
    222 F. Supp. 2d 423 (S.D.N.Y. 2002) ........................................................................ 2

*Astrazeneca LP v. Mylan Pharms., Inc.*,
    No. 08-305 (GMS), D.I. 60 (D. Del. Oct. 5, 2009) ..................................................... 2

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*,
    512 F.3d 1338 (Fed. Cir. 2008) ........................................................................ 3, 5, 8

*King Pharms., Inc. v. Sandoz Inc.*,
    No. 09-3587 (GEB), 2010 WL 3910151 (D.N.J. Oct. 1, 2010) ................................. 3

*LG Display Co. v. AU Optronics Corp.*,
    709 F. Supp. 2d. 311 (D. Del. 2010) .......................................................................... 8

*Multiform Desiccants, Inc. v. Medzam, Ltd.*,
    133 F.3d 1473 (Fed. Cir. 1998) .................................................................................. 6

*Mylan Pharms., Inc. v. Kremers Urban Dev. Co.*,
    No. 02-1628-GMS, 2004 WL 57218 (D. Del. Jan. 13, 2004) .................................... 3

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) .................................................................................. 7

## I.    INTRODUCTION

Mylan's zeal towards its position blinds it to even the possibility that it is incorrect, accusing Plaintiffs of "engag[ing] in acts of sophistry." Yet, as shown in Plaintiffs' opening brief, Plaintiffs' constructions comport with the plain language of the claims, the claim terms as read in the context of the patent specification, and the prosecution history.

Mylan's arguments are based on its flawed assertion that the claims should be limited to the "very specific architecture" of Figure 1 of the '341 patent. *See* Mylan's Claim Construction Opening Brief (D.I. 91) (hereinafter "Def's Br.") at 2. But the claims, by their very language, are not so limited. While the claims require certain elements, those elements are not limited to specific embodiments disclosed in the specification, and are not limited to a particular arrangement of those elements. Mylan's insistence that the claims only embody select, specific examples in the patent violates the fundamental rule against reading select embodiments and limitations from the specification into the claims.

The Court should adopt Plaintiffs' proposed constructions—which each comport with the claims themselves and the ordinary meanings of the claim terms, read in the context of the specification and prosecution history—and reject Mylan's attempts to unduly narrow the claims.

## II.   MYLAN'S FLAWED CONSTRUCTIONS

### A.    "Drug-Containing Core"

| Plaintiffs' Proposal | Mylan's Proposal |
|---|---|
| Drug and optional excipient(s) within a spacing layer. "Drug" is defined in the specification as "any pharmaceutically active material and can also include vitamins, minerals, nutritional supplements and the like." | A "drug containing core" is the central and innermost segment of a multi-layered structure. It is separate and distinct from the "taste masking layer" and "spacing layer." The "drug-containing core" includes a pharmaceutically active material. |

Mylan improperly attempts to limit the claims to the "very specific architecture" of Figure 1.  Def's Br. at 2.  This is perhaps best evidenced by Mylan's insistence that "drug-containing core" be "the central and innermost segment of a multi-layered structure."  Yet the claims themselves contain no such limitation.  *See* '341 Patent, claims 1, 9.[1]  And, as described in Plaintiffs' opening brief, the specification expressly contemplates structures where the innermost segment contains no drug, but instead, is a sugar sphere to which drug is applied.  *See* Shionogi Pharma, Inc. and CIMA LABS INC.'s Opening Claim Construction Brief (D.I. 90) (hereinafter "Pls' Br.") at 9-10; '341 Patent, 5:8-22.

Mylan cites two cases in support of its flawed attempt to limit a "core" to the "central and innermost segment" of a structure.  Def's Br. at 9-10.  Yet, one of Mylan's cases contradicts the very construction it proposes.  In *Astra Aktiebolag v. Andrx Pharms., Inc.*, 222 F. Supp. 2d 423 (S.D.N.Y. 2002), the dispute was whether the term "core" encompassed structures where the drug was coated onto a sugar sphere.  *Id.* at 448.  Consistent with Plaintiffs' construction, the Court in *Astra* stated that:

> [A] person of ordinary skill in the art could consider the sugar sphere itself to be a "core," but that same person ***could also consider the sugar sphere plus the active layer sprayed onto it to be a "core."*** … [T]he court finds that in the context of these two patents ***a person of ordinary skill in the art would understand the term "core" to encompass not only the sugar sphere but also the active layer sprayed or coated onto the sugar sphere.***

*Id.* (emphasis added).  Thus, the court concluded that the term "core" is not limited to the innermost segment of a structure.[2]

---

[1] The '341 Patent was attached as Exhibit 1 to the Declaration of Ryann M. Muir in Support of Plaintiffs' Opening Claim Construction Brief (D.I. 92).

[2] Mylan's other case citation, *Astrazeneca LP v. Mylan Pharms., Inc.*, No. 08-305 (GMS), D.I. 60 (D. Del. Oct. 5, 2009), provides no explanation as to how the Court arrived at its construction. Def's Br. at Ex. F.  In any event, the claim term to be construed was "a core consisting of a non-pareil seed," not "drug-containing core."  *Id.* at Ex. F, at p. 2.  Mylan provides no explanation, nor can it, as to why construction of "core consisting of a non-pareil seed" is relevant to construction of "a drug-containing core."

At least one other recently decided case is consistent with Plaintiffs' construction.  In *King Pharms., Inc. v. Sandoz Inc*., No. 09-3587 (GEB), 2010 WL 3910151 (D.N.J. Oct. 1, 2010), the court construed the term "core" to mean *"an inner portion* because that construction gives full breadth to the ordinary meaning of the term."  *Id.* at *3.  The court went on to explain that:

> '[C]ore' certainly does not disclose the contents of the core, *only its location-it is inside something*.  This ordinary meaning is supported by the term's context in the claim.  The claim states that the core is 'coated with a rate-controlling polymer coat,' **placing the core inside a polymer coat**.

*Id.* (emphasis added).  This rationale—that a core is "*inside something*"—is entirely consistent with Plaintiffs' construction that a core is "*within a spacing layer*."  As in *King*, Plaintiffs' construction is supported by the term's context in the claims, which specifically state that a "core" is surrounded by a spacing layer, *i.e*., it is within a spacing layer.

Mylan's construction also ignores the claim language and specification which expressly indicate that there can be more than one core within a spacing layer. '341 Patent, claim 1, 3:12-14.  That claim language states "***a*** drug-containing core."  The Federal Circuit has consistently held that "a" denotes "one or more."  *Baldwin Graphic Sys., Inc. v. Siebert, Inc*., 512 F.3d 1338, 1342 (Fed. Cir. 2008) ("That 'a' or 'an' can mean 'one or more' is best described as a rule, rather than merely as a presumption or even a convention.").  Indeed, courts have construed the term "a[] … core" to mean "one or more" cores.  *Mylan Pharms., Inc. v. Kremers Urban Dev. Co*., No. 02-1628-GMS, 2004 WL 57218, at *1, 3 (D. Del. Jan. 13, 2004) (upholding construction of "an inert core" as being in the plural form).  Thus, it is clear that the claims are not limited to architectures containing only a single core.

Mylan also argues that construing "drug-containing core" to be within a spacing layer means that there is "only a single layer taste masking system" surrounding the drug-containing core.  Def's Br. at 12.  This is incorrect.  As shown in the diagram below, a structure with one or

-3-

more drug-containing cores within a spacing layer can still have a taste masking layer and a

separate spacing layer surrounding those drug-containing cores.



As described in Plaintiffs' opening brief, nothing in the claim language or other intrinsic

evidence of record requires that a spacing layer surround only a single core.  Pls' Br. at 12.

Finally, Mylan cites to the specification, stating that a core "may [] be coated" with a

spacing layer, and that a taste masking layer "may be coated" over a spacing layer, and

concludes this means that a "drug-containing core" must be the central and innermost segment of

a multilayered structure.  Def's Br. at 10-11.  This makes no sense.  And, as shown in the

diagram above, a structure can contain multiple drug-containing cores, none of which are the

central and innermost segment of a multi-layered structure, and still have a spacing layer and a

taste masking layer, meeting each of these claim elements.

**B.      "Spacing Layer"**

| Plaintiffs' Proposal | Mylan's Proposal |
|---|---|
| Any material that is capable of rapidly exposing the drug core when exposed in the stomach of a patient. | A "spacing layer" is an internal discrete stratum of a multi-layered structure devoid of any pharmaceutically active material; wherein the "spacing layer" separates the "taste making layer" and "drug-containing core." |

Mylan's argument is, again, founded in its incorrect belief that the claims are limited only

to the structure depicted in Figure 1, and accordingly: a) there is only one drug-containing core

which is the innermost portion of the structure; b) this single core must be coated with, but

cannot be located within, a spacing layer; c) there can only be a single spacing layer per structure; and d) this single spacing layer cannot contain any pharmaceutically active ingredient.

But, Mylan never explains how a core can be coated with, but not located within, a spacing layer. And, the '341 patent expressly contemplates an architecture in which: a) the innermost region of the structure contains no drug (it is a sugar sphere); b) there can be more than one "drug-containing core" within a spacing layer; and c) a "drug-containing core" can be located within a spacing layer and still be coated by a spacing layer. Pls' Br. at 9-10, 12. Moreover, as with "*a* drug-containing core," the term "*a* spacing layer" is not limited to a single layer. *Baldwin Graphic Sys.,* 512 F.3d at 1342. Thus, in addition to the structure shown above, the patent claims also would cover a structure in which multiple drug-containing cores are each surrounded by their own spacing layer, as represented below.



Taste Masking Layer

Drug Core

Spacing Layer

Mylan also wrongly argues that the '341 patent "never describes something as a spacing layer simply by its potential properties." Def's Br. at 16. To the contrary, the specification expressly states that "[t]he spacing layer can be made of any material that can sequester the core from the taste masking layer" ('341 Patent, 5:62-63), and that "[t]he weight, thickness and composition of the spacing and taste masking layers are secondary to the layers function. Any material, in any thickness and any weight, which serves the functions described are contemplated." *Id.* at 5:28-31; *see also* Plfs' Br. at 13. Plaintiffs' construction of "spacing

layer" is consistent with these requirements.  Any other structural limitations of "spacing layer" are supplied by the claims themselves.  '341 Patent, claims 1, 9.

Mylan further tries to bolster its construction by arguing that the specification describes the core, spacing layer and taste masking layer as "***applied on top of each other***," such that "[e]very reference to the 'spacing layer' refers to a 'coating' ***physically applied over*** the core...." Def's Br. at 15-16 (emphasis in original).  However, the Federal Circuit has repeatedly rejected constructions that import manufacturing methods from the specification into product claims.  *See e.g.*, *AFG Indus., Inc. v. Cardinal Ig Co.*, 375 F.3d 1367, 1373 (Fed. Cir. 2004) ("determination of whether a particular structure is a 'layer' within the meaning of the claim is not affected by the method of creation of that structure.").

Finally, Mylan cites three general usage, non-technical dictionaries in support of its construction that a layer "must be a separate and distinct stratum of material."  Def's Br. at 14-15 & Ex. C.2.  But these dictionaries have nothing to do with pharmaceutical or medical drug products, and are of little relevance to the claim construction inquiry.  *See Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1478 (Fed. Cir. 1998) (cautioning against the use of non-technical dictionaries "lest dictionary definitions … be converted into technical terms of art having legal, not linguistic, significance.").  In any event, the '341 specification clearly sets out the requirements for a spacing layer as "[a]ny material, in any thickness and any weight, which serves the functions described …."  '341 Patent, 5:28-31.  The functions described are provided in claims 1 and 9 of the patent.

Mylan also argues that its dictionaries agree that a "layer" is a "uniform stratum of material" (Def's Br. at 15), apparently attempting to bootstrap this definition into its requirement that a spacing layer be "devoid of any pharmaceutically active material."  Yet, nowhere in the

claims, specification, or prosecution history is the term "layer" described as a "uniform stratum of material."  And such a requirement is clearly contradicted by the intrinsic evidence.  The "composition of the spacing and taste masking layers [is] secondary to the layers function."  '341 Patent, 5:28-29.  S*ee also id.* at 5:62-63 ("spacing layer can be made of any material") and 6:38-39 ("[a]ny material which can meet these objectives is specifically contemplated" for taste masking layer).  The Court should reject Mylan's dictionary definitions.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1322-23 (Fed. Cir. 2005) (warning against using dictionary definition that "contradict[s] any definition found in or ascertained by a reading of the patent documents.") (internal quotation omitted).

### C.  "Said Spacing Layer Surrounding Said Core and Substantially Completely Sequestering Said Core from Said Taste Masking Layer"

| Plaintiffs' Proposal | Mylan's Proposal |
|---|---|
| Said spacing layer surrounding said core and preventing the drug in said core from interfering with said taste masking layer. | A "spacing layer surrounding said core and substantially completely sequestering said core from said taste masking layer" means that the "spacing layer" is positioned between the "taste-masking layer" and the inner "drug-containing core" and that the "spacing layer" physically surrounds the entire "drug-containing core" such that the "core" and "taste masking layer" are substantially completely sequestered from each other. |

Mylan claims that Plaintiffs' construction improperly reads out structural limitations from the term by focusing solely on "properties" of the spacing layer.  Def's Br. at 17.  But Mylan ignores the very words of Plaintiffs' construction—that this term should be construed to mean "[s]aid spacing layer *surrounding said core* …."  Moreover, Mylan never defines "substantially completely sequestering," and instead, simply repeats these words in its proposed construction.  Yet, these are the very words requiring construction within this term.  Only Plaintiffs have provided a construction for "substantially completely sequestering."

Mylan also cites a claim construction order from an unrelated case in support of its

position that the spacing layer must surround the "entire" drug containing core.  Def's Br. at 17-

18 & Ex. F at p. 3.  Unlike the term to be construed here, the patent claims from that case did not

include the phrase "substantially completely sequestering" or other similar modifier.  *Id.* at Ex. F

at p. 3.  Requiring a drug containing core to be ***entirely physically surrounded*** by a spacing layer

is incompatible with the plain meaning of "substantially completely sequestering," which clearly

requires less than "completely" or "entirely."  It would be improper to construe the claims to

read the word "substantially" out of the claim language. *LG Display Co. v. AU Optronics Corp.*,

709 F. Supp. 2d. 311, 320-21 (D. Del. 2010) (rejecting construction that "reads out the term

'substantially all' from the claim language by permitting 'all.'").

### D. "Cores of Coated Particles"

| Plaintiffs' Proposal | Mylan's Proposal |
| --- | --- |
| A "core" is drug and optional excipient(s) within a spacing layer. "Coated particles" include a core, spacing layer, and taste masking layer. | A "core[] of [a] coated particle[]" is the central and innermost segment of a multi-layered structure.  It is separate and distinct from the "taste masking layer" and "spacing layer."  The "coated particle" is an independent structure that includes a "core", "spacing layer", and "taste masking layer", as those terms are defined above. |

Mylan's opening brief ignores the express claim language, specification, and prosecution

history regarding "cores of coated particles," which consistently specify that coated particles can

include more than one core per coated particle.  Def's Br. at 18-19; *see also* Plfs' Br. at 12.

While Mylan argues that "cores of coated particles" is "limited to *a* 'core'," Def's Br. at 18

(emphasis added), as shown above, the term "a" means "one or more."  *See Baldwin Graphic*

*Sys.,* 512 F.3d at 1342.

Mylan is also wrong when it argues that adopting Plaintiffs' construction of "cores of

coated particles" would lead to a "nonsensical" result.  Def's Br. at 19.  Mylan mischaracterizes

Plaintiffs' construction of both "core" and "spacing layer," and imports meanings to those terms that are neither proposed nor argued by Plaintiffs. *Id.* Rather, Plaintiffs' constructions are broader than the definitions Mylan attributes to them in its brief. For example, Plaintiffs' construction for "core" is "***drug*** and optional excipient(s) within a spacing layer," not just any excipient within a spacing layer, as argued by Mylan. *Id.* And, a "spacing layer" is the "material that rapidly exposes the core," not just any excipient, as Mylan also appears to suggest. Mylan then uses its incorrect interpretation of Plaintiffs' constructions to argue that there would be "no structural distinction" between "core" and "spacing layer." *Id.* However, as Mylan well knows, the structural distinction between the "core" and "spacing layer" are provided by the surrounding limitations in the claim, which set out the structural features for these terms. *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003) ("[T]he context of the surrounding words of the claim also must be considered in determining the ordinary and customary meaning of those terms.").

### E.    "Taste Masking Layer"

| Plaintiffs' Proposal | Mylan's Proposal |
|---|---|
| Any material which is generally insoluble in saliva at a neutral to basic pH and completely soluble in saliva at a pH less than about 6.5, which is capable of rapidly dissolving in the stomach of a patient, and which prevents exposure of the spacing layer in the mouth of a patient for at least about 20 seconds after being placed in the mouth. | A "taste masking layer" is a discrete stratum of a multi-layered structure; wherein the "taste masking layer" delays exposure of the underlying layers in a patient's mouth for a period of time sufficient to allow the dosage form to disintegrate and be swallowed. |

For the same reasons as discussed for "spacing layer," Mylan's argument that the taste masking layer is a "discrete stratum of a multi-layered structure" is incorrect. The rest of Mylan's argument is simply an attempt to buttress its flawed construction.

Mylan quotes a passage from the '341 specification and argues that this section describes the "essential" characteristics of the taste masking layer. Def's Br. at 20 (quoting '341 Patent,

6:17-22).  But the very excerpt cited by Mylan states:  "Generally, the taste masking coating must taste mask (i.e. *prevent significant exposure of the spacing layer) for at least about 20 seconds* . . . ."  '341 Patent, 6:22-24 (emphasis added).  This disclosure is consistent with and supports Plaintiffs' construction, while Mylan's proposed definition introduces uncertainty into the claim term where none exists.

### F.    Overlapping Terms from Independent Claims 1 and 9

| Plaintiffs' Proposal<br>[Term in Claim 9, also present in Claim 1] | Mylan's Proposal<br>[Term in Claim 9, also present in Claim 1] |
|---|---|
| *Same as the construction of the term in claim 1.* | *Same as the construction of the term in claim 1, except in the context of claim 9 the particular layer is a discrete stratum of a multi-layered coated particle; the "coated particle" is an independent structure which includes a "core", "spacing layer", and "taste masking layer", as those terms are defined above.* |

Mylan initially attempted to introduce the term "discrete stratum" into its construction of the three terms that appear in both independent claims 1 and 9.  As explained in Plaintiffs' opening brief, Mylan's proposal is inconsistent with a basic tenant of claim construction—terms appearing in more than one claim should be construed the same in each.  Plfs' Br. at 20.  In any event, Mylan has now apparently conceded that the same term appearing in both claims 1 and 9 should be accorded the same definition.  *See* Def's Br. at 12, n. 5.

### III.   CONCLUSION

For the reasons stated above, and in Plaintiffs' opening brief, the Court should adopt Plaintiffs' proposed constructions and reject Mylan's flawed constructions.

Respectfully Submitted,

*Of Counsel:*

David A. Manspeizer

Robert J. Gunther, Jr.

Jane M. Love

Ann-Marie C. Yvon

WILMERHALE

399 Park Avenue

New York, NY 10022

Telephone: (212) 230-8800

david.manspeizer@wilmerhale.com

robert.gunther@wilmerhale.com

jane.love@wilmerhale.com

anne-marie.yvon@wilmerhale.com

Ryann M. Muir

WILMERHALE

60 State Street

Boston, MA 02109

Telephone: (617) 526-6000

ryann.muir@wilmerhale.com

*Attorneys for Plaintiffs / Counter-Defendants*
*Shionogi Pharma, Inc. and CIMA LABS INC.*

J. Mark Gidley

Eric Grannon

Noah A. Brumfield

Jaime Crowe

WHITE & CASE LLP

701 Thirteenth Street, N.W.

Washington, DC 20005

Telephone:  (202) 626-3600

mgidley@whitecase.com

egrannon@whitecase.com

nbrumfield@whitecase.com

jcrowe@whitecase.com

*Attorneys for Plaintiff / Counter-Defendant*
*Shionogi Pharma, Inc.*

Dated: November 17, 2011

_  /s/ Kristen Healey Cramer_

Kristen Healey Cramer (#4512)

Karen R. Poppel (#5373)

CONNOLLY BOVE LODGE AND HUTZ LLP

1007 N. Orange Street

P.O. Box 2207

Wilmington, DE 19899

Telephone: (302) 658-9141

kcramer@cblh.com

kpoppel@cblh.com

*Attorneys for Plaintiffs / Counter-*
*Defendants Shionogi Pharma, Inc. and*
*CIMA LABS INC.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2011, I electronically filed **SHIONOGI PHARMA, INC. AND CIMA LABS INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF** with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that on November 17, 2011, I caused to be served true and correct copies of the **SHIONOGI PHARMA, INC. AND CIMA LABS INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF** on the following counsel as indicated below:

*Via Electronic Mail:*
Richard L. Horwitz
David E. Moore
**POTTER ANDERSON & CORROON LLP**
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Via Electronic Mail:*
Thomas J. Parker
Natalie C. Clayton
**ALSTON & BIRD LLP**
90 Park Avenue
New York, NY 10016
thomas.parker@alston.com
natalie.clayton@alston.com

Matthew J. Urbanawiz
David Kuklewicz
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309
Matt.urbanawiz@alston.com
David.kuklewicz@alston.com

_/s/ Kristen Healey Cramer_____
Kristen Healey Cramer (#4512)
**CONNOLLY BOVE LODGE AND HUTZ LLP**
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
Telephone: (302) 658-9141
kcramer@cblh.com