**CONNOLLY BOVE LODGE & HUTZ LLP**

ATTORNEYS AT LAW

WILMINGTON, DE

Kristen Healey Cramer
Partner

TEL (302) 888-6317
FAX (302) 658 5614
EMAIL kcramer@cblh.com
REPLY TO Wilmington Office

The Nemours Building
1007 North Orange St.
P.O. Box 2207
Wilmington, DE 19899
TEL: (302) 658 9141
FAX: (302) 658 5614
WEB: www.cblh.com

November 28, 2011

**VIA CM/ECF AND FACSIMILE**

Judge Michael M. Baylson
United States District Court for the
Eastern District of Pennsylvania
U.S. Courthouse
601 Market Street
Philadelphia, PA 19106-1727

Re:   ***Shionogi Pharma, Inc. et al. v. Mylan Pharmaceuticals Inc.,***
      **C.A. No. 10-1077-MMB (D. Del.):**  Letter Regarding Pre-Complaint Opinions of
      Counsel

Dear Judge Baylson,

Following the telephonic conference held on November 22, 2011 and in view of the hearing scheduled for November 29, 2011, enclosed please find a letter to Your Honor from Mark Gidley regarding a dispute amongst the parties relating to disclosure of pre-complaint opinions of counsel.

Respectfully submitted,

*/s/ Kristen Healey Cramer*
Kristen Healey Cramer (#4512)

Enclosure
4558768

WILMINGTON, DE                    WASHINGTON, DC                    LOS ANGELES, CA



CONNOLLY BOVE LODGE & HUTZ LLP
ATTORNEYS AT LAW

Judge Michael M. Baylson
November 28, 2011
Page 2


cc:
Thomas J. Parker (via electronic mail)
Natalie C. Clayton (via electronic mail)
Matthew J. Urbanawiz (via electronic mail)
David Kuklewicz (via electronic mail)
Adam J. Biegel (via electronic mail)
Jason Rottner (via electronic mail)
Richard L. Horwitz (via electronic mail)
David E. Moore (via electronic mail)
David Manspeizer (via electronic mail)
Robert J. Gunther, Jr.(via electronic mail)
Ann-Marie C. Yvon (via electronic mail)
Ryann M. Muir (via electronic mail)
J. Mark Gidley (via electronic mail)
Eric Grannon (via electronic mail)
Noah A. Brumfield (via electronic mail)
Jaime Crowe (via electronic mail)

**WHITE & CASE**

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807

Tel   + 1 202 626 3600
Fax  + 1 202 639 9355
www.whitecase.com

Direct Dial + 202 626 3698

November 28, 2011

<u>VIA E-FILING and FACSIMILE</u>

The Honorable Michael M. Baylson
United States District Court for the
Eastern District of Pennsylvania
U.S. Courthouse
601 Market Street
Philadelphia, PA  19106-1727

Re:   *Shionogi Pharma, Inc., et al. v. Mylan Pharmaceuticals Inc.,* (C.A. No. 10-1077-
      MMB):  Letter Regarding Pre-Complaint Opinions of Counsel

Dear Judge Baylson:

     We represent Plaintiffs in the above matter and write in support of Plaintiffs' efforts to
respond to Mylan's Request for Production 51 (RFP 51), which seeks: "Each opinion of counsel
concerning the patents-in-suit."  Plaintiffs believe that the two opinion letters of counsel
Plaintiffs received prior to filing suit would be dispositive of Mylan's "sham" antitrust litigation
counterclaim.  Plaintiffs are willing to disclose both of these pre-complaint opinions of counsel,
but seek to do so subject to the protections envisioned in Rule 502 of the Federal Rules of
Evidence, which provides that such a disclosure "generally results in a waiver only of the
communication or information disclosed[.]"  *E.g.,* Fed. R. Evid. 502(a) advisory committee's
note.  Particularly given the narrow scope of Mylan's "sham" counterclaim, Plaintiffs believe
that Rule 502 provides for Plaintiffs' disclosure of these pre-complaint opinions of counsel
without resulting in any other waiver of attorney client-privileged communications or attorney
work product.  Mylan has refused Plaintiffs' offer to produce the opinions on those terms,
insisting instead that Plaintiffs produce the opinions with no understanding or agreement
whatsoever as to whether any further waiver would be implicated.  Multiple meet and confer
discussions since the November 22, 2011 telephonic conference with Your Honor have not
resolved the issue, and accordingly, the parties will see Your Honor tomorrow at 2:00 p.m., as
directed in last Tuesday's conference.

I.       **Pre-Complaint Opinions of Counsel (Paul Hastings and Finnegan Henderson)**

     As Plaintiffs informed the Court during the November 22, 2011 telephonic conference,
Plaintiffs possess the pre-complaint opinions of two separate law firms — Paul Hastings and
Finnegan Henderson — that are directly responsive to Mylan's RFP 51, and that bear directly on

ABU DHABI  ALMATY  ANKARA  BEIJING  BERLIN  BRATISLAVA  BRUSSELS  BUCHAREST  BUDAPEST  DÜSSELDORF  FRANKFURT  HAMBURG
HELSINKI  HONG KONG  ISTANBUL  JOHANNESBURG  LONDON  LOS ANGELES  MEXICO CITY  MIAMI  MOSCOW  MUNICH  NEW YORK
PALO ALTO  PARIS  PRAGUE  RIYADH  SÃO PAULO  SHANGHAI  SINGAPORE  STOCKHOLM  TOKYO  WARSAW  WASHINGTON, DC

The Honorable Michael M. Baylson

WHITE & CASE

November 28, 2011

the probable cause to bring this patent infringement action.  While WilmerHale currently serves as Plaintiffs' patent trial counsel, Plaintiffs consulted with prominent patent litigation counsel at Paul Hastings and Finnegan Henderson prior to filing the patent complaint in December 2010, to assess whether Plaintiffs had a good faith basis to file this action.  Both firms prepared legal opinions regarding the strength of Plaintiffs' patent claims against Mylan.  Plaintiffs believe that consideration of these pre-complaint opinions will aid Mylan in deciding whether it should immediately drop its "sham" litigation antitrust counterclaim, and the Court in evaluating the pre-complaint probable cause to bring this action.

## II.    *PRE*'s Two-Pronged Objective and Subjective Tests

Under *PRE*, a sham antitrust counterclaimant must show that the underlying patent litigation is both (i) objectively baseless "in the sense that no reasonable litigant could realistically expect success on the merits," *PRE*, 508 U.S. at 60, and (ii) subjectively motivated by a desire to thwart competition rather than a desire to win the lawsuit, *PRE* at 61.  As the Supreme Court explained, "[t]he existence of *probable cause* to institute legal proceedings *precludes a finding* that an antitrust defendant has engaged in sham litigation."  *PRE* at 62 (emphasis added).  Probable cause, in turn, "requires *no more than a 'reasonable belief* that there is *a chance* that a claim *may be* held valid upon adjudication." *PRE* at 62 (internal citations omitted, emphasis added).  Because *PRE* "hold[s] that an objectively reasonable effort to litigate cannot be sham regardless of subjective intent," (*PRE* at 57), an antitrust counterclaimant's failure to satisfy the objective baselessness threshold test ends the inquiry; a court then would not reach the subjective test.  *PRE* at 60 ("*Only if* challenged litigation is objectively meritless *may a court* examine the *litigant's subjective motivation*") (emphasis added).

The opinions of counsel that Plaintiffs would be willing to produce in response to Mylan's RFP 51, subject to appropriate protections, would be directly relevant to both parts of *PRE*'s test.  First, the opinions are relevant to the objective threshold test because the Court could determine as a matter of law whether, based on the content of the opinions, "an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome," and is, thus, "immunized under *Noerr*."  *PRE* at 60.  "The question is not whether the defendant thought the facts to constitute probable cause, but whether the court thinks they did."  *PRE* at 63-64 (citation and internal quotation marks omitted).  If the Court agrees the opinions identify probable cause to sue for a reasonable patent holder standing in Plaintiffs' shoes, then Mylan's "antitrust claim premised on the sham exception must fail."  *PRE* at 60.

If the Court were to reach *PRE*'s subjective test, the fact of the opinions, rather than their content, would enable the Court to determine as a matter of law whether Plaintiffs were motivated by the requisite bad faith.  The opinions of counsel stating a "subjective expectation" that Plaintiffs had probable cause to sue for infringement is itself sufficient to show that Plaintiffs did not have as their "sole purpose" the intent to prevent competition.  *PRE* at 57.

## III.   The Law Supports a Limited Disclosure of Pre-Complaint Opinions of Counsel

Rule 502 of the Federal Rules of Evidence, adopted in September 2008, provides for disclosure of attorney-client privileged communications and attorney work product that results in a waiver no broader than the materials disclosed.

Under Rule 502(a), a broader waiver of "an undisclosed communication or information" — a subject matter waiver — occurs *"only if"*:

(1)  the waiver is intentional;

(2)  the disclosed and undisclosed communications or information *concern the same subject matter*; and

(3)  *they ought in fairness to be considered together*.

Fed. R. Evid. 502.  Thus, the *default rule* under Rule 502 is that Plaintiffs can produce the pre-complaint opinions in response to Mylan's request without effecting any broader waiver.

The Advisory Committee Note to Rule 502(a) provides further guidance demonstrating the propriety of disclosing both pre-complaint opinions with no further waiver.  The Advisory Committee made it clear that under the new rule, Rule 502(a), the waiver is no broader than the disclosure being made; broader waiver is limited to the "unusual situations" where fairness requires a further disclosure to protect against "misleading presentation of evidence":

> The rule provides that a voluntary disclosure in a federal proceeding . . . if a waiver, generally results in a waiver *only of the communication or information disclosed*; a subject matter waiver (of either privilege or work product) is reserved for those *unusual situations* in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and *misleading presentation of evidence* to the disadvantage of the adversary.  Thus, subject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner.

Fed. R. Evid. 502(a) advisory committee's note (emphasis added, citations omitted).

Applying Rule 502 here, Plaintiffs' disclosure would be "voluntary" (although in direct response to Mylan's RFP 51).  Plaintiffs' disclosure of the subject matter — the *pre-complaint* legal opinions of Plaintiffs' two counsel regarding the strength of Plaintiffs' patent case against Mylan — would be the only subject matter being waived.  There would be no "undisclosed communications or information concern[ing] the same subject matter" (i.e., there would be no other pre-complaint opinions of counsel that Plaintiffs would withhold).

Moreover, disclosure of the pre-complaint opinions of counsel would not be one of those "*unusual situations* in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the

3

disadvantage of the adversary."  The disclosure of pre-complaint opinions of counsel would be neither "selective" nor "misleading" — it would be a complete disclosure of the pre-complaint opinions drafted by counsel.

In addition, any **post**-complaint opinions of patent trial counsel (WilmerHale) would fall outside the relevant subject matter — i.e., the pre-complaint opinions of counsel — and would not be relevant to assess whether, **at the time Plaintiffs filed their patent infringement action**, Plaintiffs had "any chance" of success and, thus, "probable cause" to file their complaint.  As the court in *In re Wellbutrin SR Antitrust Litigation* explained in analyzing *PRE*:

> By employing the language of 'expectations' the [Supreme] Court [in *PRE*] was indicating that the analysis should focus on **what the litigant knew or reasonably could have known at the time the suits were filed, not on the results of the suits**. The analysis, in other words, must be prospective not retrospective, and therefore should be limited to the law and the facts as they existed when the decision to file suit was made.

*In re Wellbutrin SR Antitrust Litig.,* No. Civ.A. 04-5525, 2006 WL 616292, at *11 (E.D. Pa. Mar. 9, 2006) (citing *PRE*, 508 U.S. at 61 n.5) (emphasis added); *see also In re AndroGel Antitrust Litig. (No. II).*, 687 F.Supp.2d 1371, 1379 n.4 (N.D. Ga. 2010) (quoting *Wellbutrin* at *11) ("The original '894 patent matters because *'[antitrust] analysis should focus on what the litigant knew or reasonably could have known at the time the suits were filed.* ") (emphasis added).

Thus, Rule 502(a) plainly provides for Plaintiffs' disclosure of the pre-complaint opinions of counsel with no broader waiver.  Rule 502(d) is also important here:  "A Federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court — in which event the disclosure is also not a waiver in any other Federal or State proceeding."  Fed. R. Evid. 502(d).  Accordingly, Rule 502 provides not only for limited disclosures but also for use limitations on any such disclosure.  Here, Plaintiffs are willing to disclose the pre-complaint opinions of counsel in response to Mylan's RFP 51 for the sole purpose of achieving a quick resolution of Mylan's "sham" antitrust counterclaim, and Rule 502(d) supports such a use limitation.  Mylan's use of the pre-complaint opinions in the patent-infringement litigation would be improper.  Without such a use limitation in accordance with Rule 502(d), every defendant in a patent-infringement case would be incentivized to file a "sham" litigation monopoly counterclaim in hopes of achieving an open-ended waiver of privilege and work product by the patent holder for use in defense of the patent-infringement suit.

*       *       *

For the foregoing reasons, Plaintiffs seek an order consistent with Rule 502 that production of the opinions of the pre-complaint patent counsel in response to Mylan's RFP 51 would be:  1) limited to disclosure of the pre-complaint opinions; 2) involve no broader waiver of the attorney-client privilege or attorney work product; and 3) would be limited to use solely in

The Honorable Michael M. Baylson

WHITE & CASE

November 28, 2011

connection with the resolution of the sham litigation antitrust counterclaim and not be used in the patent case. The opinions would be produced to Mylan's outside counsel pursuant to an appropriate protective order.

Respectfully submitted,

J. Mark Gidley