

**David E. Moore**
Partner
Attorney at Law
dmoore@potteranderson.com
302 984-6147  Direct Phone
302 658-1192  Fax

1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951
302 984-6000

**www.potteranderson.com**

November 29, 2011

**VIA EFILING and FACSIMILE**

The Honorable Michael M. Baylson
United States District Court
  for the Eastern District of Pennsylvania
U.S. Courthouse
601 Market Street
Philadelphia, PA 19106-1727

     Re:  *Shionogi Pharma, Inc. et al. v. Mylan Pharmaceuticals Inc.*,
        C.A. No. 10-1077-MMB (D. Del.)

Dear Judge Baylson:

     Following the telephonic conference held on November 22, 2011 and in view of the hearing scheduled for this afternoon, enclosed please find a letter to Your Honor from Adam J. Biegel responding to Plaintiff's letter dated November 28, 2011.

          Respectfully,

          */s/ David E. Moore*

          David E. Moore

DEM/nmt/1037125 / 36324

Enclosure
cc:    Clerk of Court (via first class mail)
       Counsel of Record (via electronic mail)

# ALSTON&BIRD LLP

One Atlantic Center
1201 West Peachtree Street
Atlanta, GA  30309-3424

404-881-7000
Fax: 404-253-8490
www.alston.com

**Adam J. Biegel**                    **Direct Dial: 404-881-4692**                    **Email: adam.biegel@alston.com**

November 29, 2011

*VIA E-FILING & FACSIMILE*

The Honorable Michael M. Baylson
United States District Court for the
Eastern District of Pennsylvania
U.S. Courthouse
601 Market Street
Philadelphia, PA 19106-1727

> Re:   *Shionogi Pharma, Inc. et al. v. Mylan Pharmaceuticals Inc.*,
>         C.A. No. 10-1077-MMB (D. Del.)

Dear Judge Baylson:

I write on behalf of Mylan Pharmaceuticals Inc. ("Mylan") with regard to the scope of Plaintiffs' waiver of privilege should they rely on opinions of counsel to defend against Mylan's sham litigation counterclaim and in reply to Plaintiffs' letter from yesterday on that topic.

## I.     Rule 502 Does Not Provide Plaintiffs with an End-Run Around Subject Matter Waiver of Privilege

Plaintiffs' letter confuses two separate and distinct issues:  (i) the scope of protection given to privileged materials produced in litigation, especially inadvertently produced, and (ii) the waiver of the attorney-client privilege and work-product protection that occurs when a party relies on the advice of counsel as a defense to a claim.  While Federal Rule of Evidence 502 ("Rule 502") specifically addresses the first issue, it does not address the latter.

In fact, the Advisory Committee's Notes to Rule 502 explicitly state that that it does not change the long-standing rule that relying on the advice of counsel as a defense waives the entire subject matter of that defense:

> Moreover, while establishing some exceptions to waiver, the rule does not purport to supplant applicable waiver doctrine generally.

> The rule governs only certain waivers by disclosure.  Other common-law waiver doctrines may result in a finding of waiver

---

Atlanta • Brussels • Charlotte • Dallas • Los Angeles • New York • Research Triangle • Silicon Valley • Ventura County • Washington, D.C.

November 29, 2011
Page 2

> even where there is no disclosure of privileged information or
> work product. *See, e.g., Nguyen v. Excel Corp.,* 197 F.3d 200 (5th
> Cir. 1999) (reliance on an advice of counsel defense waives the
> privilege with respect to attorney-client communications pertinent
> to that defense).

Fed. R. Evid. 502 advisory committees note.

Similarly, an addendum to the Advisory Committee's Notes espouses a
congressional intent that Rule 502 not alter the settled law that relying on the
opinions of counsel waives the privilege as to those communications and other
information concerning the same subject matter:

> This subdivision does not alter the substantive law regarding when
> a party's strategic use in litigation of otherwise privileged
> information obliges that party to waive the privilege regarding
> other information concerning the same subject matter, so that the
> information being used can be fairly considered in context.  One
> situation in which this issue arises, the assertion as a defense in
> patent-infringement litigation that a party was relying on advice of
> counsel, is discussed elsewhere in this Note.  In this and similar
> situations, under subdivision (a)(1) the party using an attorney-
> client communication to its advantage in the litigation has, in so
> doing, intentionally waived the privilege as to other
> communications concerning the same subject matter, regardless of
> the circumstances in which the communication being so used was
> initially disclosed.

Fed. R. Evid. 502 addendum to advisory committee notes.

Plaintiffs' letter from yesterday makes clear that Plaintiffs not only intend
to produce two opinions of counsel, but to rely on them substantively to defeat
Mylan's sham litigation claim.  The Advisory Committee's Notes to Rule 502,
though ignored by Plaintiffs, dictate that the scope of the resulting waiver in such
a case is not and cannot be limited by Rule 502.

II.     **Plaintiffs' Reliance on the Opinions of Counsel Waive the
        Privilege as to All Communications and Work Product Relating to
        These Opinions and the Subject Matter of Their Contents**

If Plaintiffs voluntarily waive the attorney-client privilege by relying on
the advice of their lawyers, then the "widely applied" rule for "determining the
scope of a waiver of attorney-client privilege is that the waiver applies to all other
communications relating to the same subject matter." *Brigham and Women's
Hosp. Inc. v. Teva Pharms. USA, Inc.*, 707 F. Supp. 2d 463, 471 (D. Del. 2010)

November 29, 2011
Page 3

(quoting *Ft. James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005)); *see also Greene, Tweed of Del., Inc. v. DuPont Dow Elastomers, L.L.C.*, 202 F.R.D. 418, 420 (E.D. Pa. 2001) ("The general rule regarding the voluntary disclosure of privileged attorney-client communications is that the disclosure waives the privilege as to all other communications on the same subject."). By placing the advice of their counsel at issue, Plaintiffs waive not only the "otherwise privileged communications between the attorney and client, but also . . . the attorney's documents which reflect the substance of such advice, even if such documents would otherwise be immune from discovery." *Brigham*, 707 F. Supp. 2d at 472. This waiver applies not only to the sham litigation phase of the case, but also to the patent infringement claims. *See Genentech, Inc. v. U.S. Int'l Trade Comm'n*, 122 F.3d 1409, 1416 (Fed. Cir. 1997) ("Once the attorney-client privilege has been waived, the privilege is generally *lost for all purposes* and in all forums.") (emphasis added); *see also V. Mane Fils*, 249 F.R.D. at 155 ("[O]nce a party waives the attorney-client privilege, it relinquishes the privilege *for all purposes and circumstances thereafter*.") (emphasis added).

This rule is based on sound policy preventing "a party from using the advice he received as both a sword, by waiving privilege to favorable advice, and a shield, by asserting privilege to unfavorable advice." *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1303 (Fed. Cir. 2006). In other words, "where a party is attempting to gain an advantage or make offensive use through intentional disclosure, there must be a full subject matter waiver." *V. Mane Fils S.A. v. Int'l Flavors and Fragrances, Inc.*, 249 F.R.D. 152, 155 (D. N.J. 2008). Thus, sound policy precludes Plaintiffs from producing the opinions of counsel in support of their defense against Mylan's sham litigation claim while at the same time shielding from discovery all surrounding communications and documents that may very well undermine those opinions.

Mylan seeks two fundamental categories of documents in light of Plaintiffs' reliance on the advice of counsel: 1) documents concerning the opinions themselves; and 2) documents relating to the subject matter of those opinion letters. First, because "the privilege cannot be used as both a sword and a shield," Plaintiffs "must disclose any and all of the documents surrounding these opinion letters as well as the opinions themselves." *Id.* Second, if Plaintiffs willingly produce the opinions of counsel, Plaintiffs waive the privilege as to the subject matter of the contents of those opinions. *Greene*, 202 F.R.D. at 421; *see also Tyco Healthcare Grp. v. E-Z-EM, Inc.*, No. 2:07-CV-262, 2010 WL 2079920, at *2-*3 (E.D. Tex. May 24, 2010) ("[I]t is clear that the waiver of attorney client privilege extends to all subjects that are discussed in the opinion letter . . . ."); *Katz v. AT & T Corp.*, 191 F.R.D. 433, 440 (E.D. Pa. 2000) ("Although the purpose for which a document is disclosed is relevant in determining the scope of the waiver, the subject matter of the disclosure must be

November 29, 2011
Page 4

determined in reference to the content of the disclosed document.").[1]
Accordingly, if Plaintiffs produce the opinions of counsel to support their reliance
on the advice of counsel as a defense to the Mylan's sham litigation claim,
Plaintiffs similarly waive the privilege as to all documents relating to those
opinions and relating to the subject matter of the contents of the opinions.

In the unique circumstances of a sham litigation claim in the Hatch
Waxman context, Mylan's discovery of these materials cannot be limited to pre-
complaint information as suggested by Plaintiffs in yesterday's letter. The
Southern District of New York, in *In re Buspirone Antitrust Litigation*, 208
F.R.D. 516, 525 (S.D.N.Y. 2002), addressed this exact issue and required the
production of materials after the filing of the lawsuit. Like here, because the
disclosing party would rely upon the advice of counsel in justifying its intent to
pursue patent infringement suits, the court held that it also would "put at issue its
intent not only at the time of the filing but also during the prosecution of the
suits." *Id.* at 526. *In re Buspirone* recognized that, in order to maintain the 30-
month stay granted by Hatch-Waxman, Plaintiffs must "actively litigate the case
or else the stay could be terminated through an order of the court." *Id.* at 525
(citing 21 U.S.C. § 355(j)(5)(B)(iii)). Plaintiffs continued prosecution of an
objectively baseless lawsuit in an effort to perpetuate the benefit of the Hatch-
Waxman stay necessitates "discovery of what occurred in the post-filing period."
*In re Buspirone*, 208 F.R.D. at 525. Thus, should Plaintiffs elect to rely on the
opinions of counsel, the distinctive posture of a sham litigation claim in the
context of Hatch Waxman means that Mylan is entitled to discovery post-filing of
the complaint to determine whether Plaintiffs later developed an understanding
that the suit was baseless and nevertheless maintained the suit in bad faith.[2]

Nor should the fact that Plaintiffs now have different trial counsel alter the
Court's analysis. As highlighted in *In re Buspirone*, the unique nature of Hatch-
Waxman litigation requires the discovery of post-filing information relating to
Plaintiffs' intent. *See In re Buspirone*, 208 F.R.D. at 525-26. Moreover, here
Plaintiffs have "blurred" the distinction between trial and opinion counsel by
using the authors of one of the opinions – Paul, Hastings, Janofsky, & Walker
LLP ("Paul Hastings") – as both trial and opinion counsel. *See Tyco* 2010 WL
2079920, at *3 (distinguishing *In re Seagate Tech.*, 497 F.3d 1360 (Fed. Cir.
2007), because opinion counsel joined the trial team). For the first half of this

---

[1] Mylan has not yet seen Plaintiffs' opinions of counsel, but presumably this
would mean Plaintiffs waive the privilege as to the issue of whether Mylan's
proposed product infringes Plaintiffs' patent.

[2] Plaintiffs cite no precedent that holds otherwise. *See In re Androgel Antitrust
Litig. (No. II)*, 687 F. Supp. 2d 1371 (N.D. Ga. 2010) (not addressing waiver of
privilege in any way); *In re Wellbutrin SR Antitrust Litig.*, No. Civ. A. 04-5525,
2006 WL 616292 (E.D. Pa. Mar. 9, 2006) (same).

November 29, 2011
Page 5

case, Paul Hastings was Plaintiffs' lead trial counsel.  Their current trial counsel, WilmerHale, did not make an appearance until six months ago.  By operating as Plaintiffs' trial counsel earlier in this case, Paul, Hastings' function was no longer to merely provide an "objective assessment," which "calls into serious question whether there is a 'fundamental difference between these types of legal advice' in this case." *Tyco*, 2010 WL 2079920, at *3 (quoting *Seagate*, 497 F.3d at 1373). Because Plaintiffs blurred the distinction between opinion and trial counsel, they cannot shield from discovery communications with trial counsel that have otherwise been waived.  *See Celerity, Inc. v. Ultra Clean Holding, Inc.*, 476 F. Supp. 2d 1159, 1164-67 (N.D. Cal. 2007) (finding that waiver extended to trial counsel because "[i]f a draft opinion is prepared and given to [opinion counsel] who reviews in light of trial strategy before it is given to the client and then sends it back for redrafting if it is a little weak or inconsistent with the trial strategy, plaintiffs have a right to know this"); *see also Affinion Net Patents, Inc. v. Maritz, Inc.*, 440 F. Supp. 2d 354, 356 (D. Del. 2006) (holding that waiver extended to trial counsel despite retention of different lawyers within same firm). Accordingly, Plaintiffs' attempt to shield from discovery post-filing information related to the opinions of counsel or the subject matter of the contents therein should be rejected.

Mylan respectfully requests that the Court consider this precedent in determining the scope of Plaintiffs' privilege waiver should they produce opinions of counsel in defense against Mylan's sham litigation claim.

Respectfully Submitted,

*/s/ Adam J. Biegel*

Adam J. Biegel

AJB:JRR

LEGAL02/32990149v3