IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SHIONOGI PHARMA, INC., et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MYLAN PHARMACEUTICALS, INC. | : | NO. 10-1077 |

**MEMORANDUM RE: MOTION TO LIMIT SCOPE OF WAIVER UNDER F.R.E. 502**

Baylson, J.                                                                                 December 21, 2011

     Presently before the Court is a letter request (ECF No. 121) of Plaintiffs-Counterclaim-Defendants Shionogi Pharma, Inc. ("Shionogi") and CIMA Labs Inc. ("CIMA"), which the Court construes as a motion to limit the scope of waiver of the attorney-client privilege and the attorney-work product protection under Rule 502 of the Federal Rules of Evidence, should they elect to rely upon two opinions of counsel in defense of an antitrust counterclaim brought by Defendant-Counterclaim-Plaintiff Mylan Pharmaceuticals Inc. ("Mylan Pharma").

     The Court held oral argument on November 29, 2011. Thereafter, Shionogi and CIMA elected not to rely on the opinions of counsel, and therefore the Court will deny the motion as moot. However, the Court will take this opportunity to explain its prior ruling made at the conclusion of oral argument that the scope of waiver would be subject to Rule 502(a).

I.     **Relevant Background**

     On December 9, 2010, Shionogi and CIMA filed a patent-infringement action against Mylan, Inc. ("Mylan") and Mylan Pharma, alleging that they infringed a patent (the '341 patent) exclusively licensed and owned by Shionogi and CIMA, respectively, relating to orally disintegrating tablets containing prednisolone sodium phosphate, prednisolone, or any salt base

1

thereof. Shionogi holds a New Drug Application ("NDA") for 10 mg, 15 mg, and 30 mg prednisolone sodium phosphate orally disintegrating tablets, which it markets in the United States as Orapred ODT®. Specifically, Shionogi and CIMA alleged that Mylan and Mylan Pharma infringed the '341 patent by submitting an Abbreviated New Drug Application ("ANDA") to the FDA, seeking FDA approval to market generic 10 mg, 15 mg, and 30 mg prednisolone sodium phosphate orally disintegrating tablets prior to the expiration of the '341 patent. The filing of the patent infringement action by Shionogi and CIMA triggered the automatic stay provision of the Hatch-Waxman Act, 21 U.S.C. § 355(j)(5)(B)(iii), which precludes the FDA from approving the ANDA for 30 months unless prior to that time the suit is resolved or the '341 patent expires.

Subsequently, on January 18, 2011, Mylan and Mylan Pharma filed two antitrust counterclaims against Shionogi and CIMA, alleging, among other things, that Shionogi and CIMA violated Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1-2, by bringing a baseless infringement action for the purpose of restricting the entry of Mylan and Mylan Pharma into the relevant market. Shortly thereafter, the parties stipulated to the dismissal of Mylan from this litigation without prejudice. On May 26, 2011, the Court granted Shionogi's and Mylan Pharma's motion to dismiss the antitrust counterclaims for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, but granted Mylan Pharma leave to amend. On June 23, 2011, Mylan Pharma filed an amended counterclaim alleging that Shionogi and CIMA violated Section 2 of the Sherman Act, 15 U.S.C. § 2.

Mylan Pharma's amended antitrust counterclaim is barred unless it can prove that the patent infringement action commenced by Shionogi and CIMA is a "sham." Prof'l Real Estate

Investors, Inc. v. Columbia Pictures Indus., Inc. ("PRE"), 508 U.S. 49, 60-61 (1993). In PRE, the Supreme Court outlined a two-part definition of "sham" litigation, containing both an objective and a subjective component:

> First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under Noerr, and an antitrust claim premised on the sham exception must fail. Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor, through the use of the governmental process—as opposed to the outcome of that process—as an anticompetitive weapon.

Id. (emphasis in original) (citations, alternations, and internal quotations omitted). Prior to commencing the patent infringement lawsuit, Shionogi and CIMA received two opinions of counsel that they believe disproves Mylan Pharma's sham antitrust counterclaim under the standard set forth in PRE.

During discovery, Mylan Pharma served numerous production requests on Shionogi and CIMA. Of those, Request for Production 51 seeks: "Each opinion of counsel concerning the patents-in-suit."

On November 28, 2011, Shionogi and CIMA submitted a letter to the Court explaining that they would be willing to disclose the two pre-complaint opinions of counsel on the condition that the scope of waiver of the attorney-client privilege and work-product protection is limited to the opinions themselves under Rule 502. (ECF No. 121.) On November 29, 2011, Mylan Pharma submitted a responsive letter to the Court, arguing that, should Shionogi and CIMA rely on the opinions of counsel, the scope of waiver extends to all communications and work product

3

relating to the opinions of counsel and the subject matter of their contents. (ECF No. 122.) That day, the Court heard oral argument on the issue. Mylan Pharma's counsel asserted that Rule 502 did not govern. The Court disagreed and found that a limited waiver under Rule 502 was appropriate. The Court ordered Shionogi and CIMA to produce the opinions to Mylan Pharma, but left open any decision about the scope of the waiver in order to give the parties the opportunity to consider their positions and submit proposed forms of order regarding the scope of waiver. (ECF No. 126.) Following oral argument, and upon the Court's request, the parties submitted proposed forms of order regarding the scope of waiver. (ECF Nos. 123, 124.)

The parties each subsequently submitted a proposed form of order, both of which, although not in agreement on all points, provided that Shionogi and CIMA, having produced the two opinions of counsel to Mylan Pharma, would elect in writing whether they would rely upon those opinions in defense of Mylan Pharma's antitrust counterclaim. If not, Mylan Pharma would return or destroy all copies of the opinions and, pursuant to Rule 502, the production of the opinions would not result in a waiver of the attorney-client privilege or work-product protection in this or any other subsequent litigation. On November 30, 2011, the Court ordered that Shionogi and CIMA make their election in writing by 5:00 p.m. on December 2, 2011, unless both parties agreed to an extension. (ECF No. 126.) On December 2, 2011, Shionogi and CIMA informed the Court that they had elected not to rely upon the two opinions of counsel in defense of Mylan Pharma's antitrust counterclaim. (ECF No. 129.)

II.     **Discussion**

Recently enacted Rule 502 of the Federal Rules of Evidence adopted a national standard to govern the intentional waiver of the attorney-client privilege and work-product protection. Cf.

Rhoads Indus., Inc. v. Bldg. Materials Corp. of America, 254 F.R.D. 216, 217-18 (E.D. Pa. 2008) (recognizing that Rule 502 set a national standard to govern inadvertent waiver). Rule 502 "modified the scope of any forfeiture that arises from the disclosure of privileged information." U.S. Airline Pilots Ass'n v. Pension Benefit Guar. Corp., 274 F.R.D. 28, 31 (D.D.C. 2011) (quoting Trs. of Elec. Workers Local No. 26 Pension Trust Fund v. Trust Fund Advisors, Inc., 266 F.R.D. 1, 10-11 (D.D.C. 2010)).

Rule 502(a) provides that a waiver resulting from a disclosure of privileged or protected information in a federal proceeding extends to an undisclosed communication or information "only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." Fed. R. Evid. 502(a). Thus, under Rule 502(a), the deliberate disclosure of privileged or protected information may lead to the compelled disclosure of additional privileged or protected information, if they concern the same subject matter and ought in fairness to be considered together.

No reported decision has considered the application of Rule 502(a) in the precise circumstances of this case. However, the Explanatory Note to Rule 502 provides some guidance, particularly with respect to the application of the fairness prong.

As the Explanatory Note indicates, if a waiver is found, Rule 502(a) limits the scope of the waiver to the information disclosed, unless a broader waiver is made necessary by the intentional and misleading use of privileged or protected communications or information:

> The rule provides that a voluntary disclosure in a federal proceeding or to a federal office or agency, if a waiver, generally results in a waiver only of the communication or information disclosed; a subject matter waiver (of either

> privilege or work product) is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary. See, e.g., In re United Mine Workers of America Employee Benefit Plans Litig., 159 F.R.D. 307, 312 (D.D.C. 1994) (waiver of work product limited to materials actually disclosed, because the party did not deliberately disclose documents in an attempt to gain a tactical advantage). Thus, subject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner.

Fed. R. Evid. 502 advisory committee's note (revised Nov. 28, 2007). Accordingly, "a party that makes a selective, misleading presentation that is unfair to the adversary opens itself to a more complete and accurate presentation." Id.

Notably, Rule 502 did not alter the substantive law governing when a waiver occurs. Indeed, the Explanatory Note confirms that, "while establishing some exceptions to waiver, the rule does not purport to supplant applicable waiver doctrine generally." Fed. R. Evid. 502 advisory committee's note (revised Nov. 28, 2007).

Prior to the enactment of Rule 502, courts had developed various common law doctrines concerning the circumstances when a waiver occurs and the scope of that waiver. As the Explanatory Note recognizes, certain "common-law waiver doctrines may result in a finding of waiver even where there is no disclosure of privileged information or work product." Fed. R. Evid. 502 advisory committee's note (revised Nov. 28, 2007). One such doctrine provides that "reliance on an advice of counsel defense waives the privilege with respect to attorney-client communications pertinent to that defense," even when no disclosure has been made. Id. (citing Nguyen v. Excel Corp., 197 F.3d 200 (5th Cir. 1999)). The Explanatory Note makes clear that this doctrine remains unaffected by Rule 502. Id. ("The rule is not intended to displace or modify federal common law concerning waiver of privilege or work product where no disclosure has

been made.").

However, whether a waiver occurs in the first instance is a separate and distinct issue from the appropriate scope of a waiver. As expressly stated in the title of the rule itself, Rule 502(a) is intended to address only the latter issue: the "scope of a waiver." Fed. R. Evid. 502(a); see also Fed. R. Evid. 502 advisory committee's note (revised Nov. 28, 2007) ("The Rule covers issues of scope of waiver, inadvertent disclosure, and the controlling effect of court orders and agreements." (emphasis added)). Therefore, while Rule 502(a) did not alter the substantive law concerning when a waiver occurs in the advice of counsel context, the plain terms and purpose of the rule evince an intent to limit the scope of waiver in such circumstances.[1]

In this case, Mylan Pharma contends that the Addendum to the Advisory Committee Notes expressly provides that Rule 502(a) was not intended to alter existing substantive law addressing the scope of waiver in patent-infringement cases when an advice of counsel defense is raised. In support of its position, Mylan Pharma brought to the Court's attention numerous cases, both pre- and post-Rule 502, in which the assertion of an advice of counsel defense by an alleged

---

[1] Rule 502(a) appears to address only "partial," and not "selective" waiver. In Westinghouse Elec. Corp. v. Republic of Philippines, 951 F.2d 1414 (3d Cir. 1991), the Third Circuit rejected the selective waiver rule, which permits a client who has disclosed privileged or protected information to one party to continue to assert the attorney-client privilege or work-product protection against other parties. Id. at 1423 n.7. Westinghouse did not involve partial waiver, which permits a client who has disclosed a portion of such information to continue asserting the attorney-client privilege or work-product protection as to other documents concerning the same subject matter. Id. at 1423 n.7, 1426. However, in briefly addressing partial waiver, the court noted that "[i]f partial waiver does disadvantage the disclosing party's adversary by, for example, allowing the disclosing party to present a one-sided story to the court, the privilege will be waived as to all communications on the same subject." Id. at 1426 n.12. This statement is consistent with the principle expressed in the Explanatory Note that Rule 502(a) limits the scope of a waiver to the information disclosed, unless a broader waiver is necessary "to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." Fed. R. Evid. 502 advisory committee's note (revised Nov. 28, 2007).

patent infringer in response to a claim of willful infringement resulted in a relatively broad subject matter waiver. See In re Seagate Tech., LLC, 473 F.3d 1360, 1372-76 (Fed. Cir. 2007); In re Echostar Commc'ns, Corp., 448 F.3d 1294, 1302-05 (Fed. Cir. 2006); Tyco Healthcare Group LP v. E-Z-EM, Inc., No. 2:07-CV-262 (TJW), 2010 WL 2079920, at *2-*3 (E.D. Tex. May 24, 2010); V. Mane Fils S.A. v. Int'l Flavors & Fragrances, Inc., 249 F.R.D. 152, 154-55 (2008); Celerity, Inc. v. Ultra Clean Holding, Inc., 476 F. Supp. 2d 1159, 1164-67 (N.D. Cal. 2007); Affinion Net Patents, Inc. v. Maritz, Inc., 440 F. Supp. 2d 354, 356 (D. Del. 2006); Greene, Tweed of Del., Inc. v. Dupont Dow Elastomers, LLC, 202 F.R.D. 418, 420-22 (E.D. Pa. 2001); Katz v. AT&T Corp., 191 F.R.D. 433, 439-41 (E.D. Pa. 2000); McCormick-Morgan, Inc. v. Teledyne Indus., Inc., 765 F. Supp. 611, 613-14 (N.D. Cal. 1991); cf. Brigham & Women's Hosp. Inc. v. Teva Pharm. USA, Inc., 707 F. Supp. 2d 463, 471-72 (D. Del. 2010) (assertion of advice of counsel by patent holder in response to assertion of inequitable conduct defense by alleged infringer resulted in waiver as to all information on issue of inequitable conduct).[2]

Although the Addendum does indeed address the assertion of advice of counsel in the patent-infringement context, it does not support the argument that Mylan Pharma advanced. Drawing a distinction between the act of mere "disclosure" of privileged information and the strategic "use" of such information, the Addendum provides:

> [Subdivision (a)] does not alter the substantive law regarding when a party's strategic use in litigation of otherwise privileged information obliges that party to waive the privilege regarding other information concerning the same subject matter, so that the information being used can be fairly considered in context. One situation in which this issue arises, the assertion as a defense in patent-infringement litigation that a party was relying on advice of counsel, is

---

[2] Surprisingly, none of the cases cited by Mylan Pharma that post-date Rule 502 even refer to the rule.

8

discussed elsewhere in this Note. In this and similar situations, under subdivision (a)(1) the party using an attorney-client communication to its advantage in the litigation has, in so doing, intentionally waived the privilege as to other communications concerning the same subject matter, regardless of the circumstances in which the communication being so used was initially disclosed.

Fed. R. Evid. 502 Addendum to Advisory Committee's Notes.

As discussed above, the Explanatory Note addresses the general doctrine that reliance on an advice of counsel defense waives the privilege with respect to attorney-client communications pertinent to that defense, even when no disclosure has been made. However, the Explanatory Note does not address the application of this doctrine or the scope of waiver resulting therefrom in the patent-infringement context specifically.[3] Reading the Addendum in conjunction with the portions of the Explanatory Note discussed above, and considering that the Addendum purports to specifically address the distinction between disclosure and use, the Addendum is most reasonably understood to reiterate the general principle expressed in the Explanatory Note that Rule 502(a) limits the scope of a waiver to the information disclosed, unless a broader waiver is necessary "to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." Fed. R. Evid. 502 advisory committee's note (revised Nov. 28, 2007).

Even if, as Mylan Pharma contends, Rule 502(a) was not intended to alter existing substantive law governing the scope of waiver in patent-infringement cases when an advice of

---

[3] The Court sought clarification of the suggestion in the Addendum that advice of counsel in the patent-infringement context is "discussed elsewhere in this Note." As a former (non-voting) member of the Advisory Committee on Evidence at the time Rule 502 was being drafted, the undersigned contacted Professor Daniel Capra, Reporter to the Advisory Committee on Evidence, for assistance. Professor Capra responded by e-mail that the reference is to the Committee Note which describes when there is a subject matter waiver and the description covers the typical case in which an advice of counsel defense is raised – it protects against a "selective and misleading presentation of evidence to the disadvantage of the adversary." Fed. R. Evid. 502 advisory committee's note (revised Nov. 28, 2007).

counsel defense is raised, the broad subject matter waiver that Mylan Pharma seeks here still would not necessarily be appropriate. Indeed, even some of the cases on which Mylan Pharma relies demonstrate that, prior to the enactment of Rule 502, courts imposed limitations on the temporal and substantive scope of subject matter waivers in patent-infringement cases in such circumstances. See Seagate Tech., 473 F.3d at 1374 (holding "as a general proposition, that asserting the advice of counsel defense and disclosing opinions of opinion counsel do not constitute waiver of the attorney-client privilege for communications with trial counsel," but that "courts remain free to exercise their discretion to extend waiver to trial counsel, such as if a party or counsel engages in chicanery"); Katz, 191 F.R.D. at 441 (limiting scope of waiver to "the time period prior to the filing of the applications for the patents-in-suit in the prior litigation"). Moreover, Mylan Pharma fails to fully appreciate that if Shionogi and CIMA had elected to raise an advice of counsel defense in this case, they would have done so in response to an antitrust counterclaim, not in response to a claim of patent infringement. Thus, while the patent-infringement cases on which Mylan Pharma relies may be potentially instructive, they are ultimately off-point as a factual matter.

Another case that Mylan Pharma brought to the Court's attention – In re Buspirone Antitrust Litigation, 208 F.R.D. 516 (S.D.N.Y. 2002) – is more analogous factually to the case at bar. There, plaintiffs brought antitrust claims against Bristol-Myers – the holder of a patent for the drug buspirone – alleging that Bristol-Myers attempted to interfere with generic competitors' entry into the buspirone market by, among other things, filing patent infringement suits to obtain an automatic stay of the FDA's approval of generic buspirone under the Hatch-Waxman Act. Id. at 519-20. Plaintiffs filed a motion seeking to compel Bristol-Myers to decide whether it

intended to elect a good faith or reliance on counsel defense. The court granted the motion, and determined that if Bristol-Myers elected to assert such a defense, it would "put at issue its intent not only at the time of filing but also during the prosecution of the suits," thus extending the scope of the waiver to materials generated following the institution of the patent infringement suits. Id. at 525-26.[4]

Significantly, however, Buspirone predates the enactment of Rule 502. As explained above, under Rule 502(a), the scope of waiver is limited to the information disclosed, unless a broader waiver is made necessary by the intentional and misleading use of privileged or protected communications or information. Thus, because Rule 502(a) applies to this case, had Shionogi and CIMA elected to rely on the two opinions of counsel in defense of Mylan Pharma's antitrust claims, the Court could extend the scope of the waiver beyond those opinions to additional materials only after determining that they concerned the same subject matter and that fairness required as much. But since Shionogi and CIMA elected not to rely on the opinions of counsel, the Court need not define their subject matter or determine the extent to which the waiver of the attorney-client privilege and work-product protection would be fair in the unique circumstances of this case.

### III. Conclusion

Accordingly, because Shionogi and CIMA elected not to rely upon the two opinions of counsel in defense of Mylan Pharma's antitrust counterclaim, the Court will deny the motion to limit the scope of waiver of the attorney-client privilege and work product protection as moot.

---

[4] The court also determined that the scope of the waiver extended to opinions of counsel not communicated to the client. In re Buspirone Antitrust Litig., 208 F.R.D. 516, 525 (S.D.N.Y. 2002).

An appropriate order follows.

O:\DE Cases\10-1077 Shionogi v. Mylan\Shionogi v Mylan Memo Mot Limit Waiver.wpd

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SHIONOGI PHARMA, INC., et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MYLAN PHARMACEUTICALS, INC. | : | NO. 10-1077 |

**ORDER RE: MOTION TO LIMIT SCOPE OF WAIVER UNDER F.R.E. 502**

AND NOW, this 21st day of December, 2011, upon consideration of the letter request (ECF No. 121) of Plaintiffs-Counterclaim-Defendants Shionogi Pharma, Inc. and CIMA Labs Inc., which the Court construes as a motion to limit the scope of waiver of the attorney-client privilege and the attorney-work product protection under Rule 502 of the Federal Rules of Evidence, and the parties' letter briefing and oral argument, and for the reasons set forth in the accompanying memorandum of law, it is hereby ORDERED that the motion is DENIED as moot.

BY THE COURT:

_____
Michael M. Baylson, U.S.D.J.

O:\DE Cases\10-1077 Shionogi v. Mylan\Shionogi v Mylan Order Mot Limit Waiver.wpd